UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------- x

A.R.I. AGENT, LLC, et al.,                                    :
                                                              :
                                                              :
        Plaintiffs,                                           :        Civil Action No.: 26-cv-03778 (JAV)
                                                              :
                                                              :
v.                                                            :
                                                              :
SHAWNE MERRIMAN, et al.,                                      :
                                                              :
                                                              :
        Defendants.                                           :
                                                              :
-------------------------------------------------------------------------- x

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING
<u>ORDER AND PRELIMINARY INJUNCTION</u>**

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT. ................................................................................... 1

II.     MERRIMAN WAS PROPERLY SERVED. ............................................................... 1

III.    MERRIMAN'S OWN VERIFIED PLEADING DEFEATS HIS OPPOSITION. ............. 2

        A.      Merriman's Sworn Admissions Establish Irreparable Harm. ............................... 2
        B.      The Emergency is Real and the Harm Is Ongoing. ................................................. 3

IV.     PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS. ................................... 5

        A.      The Proxy Is a Governance Right, Not an Article 9 Disposition. .......................... 5
        B.      The Non-Disparagement Covenant Reaches Merriman's False Statements. .......... 7
        C.      The Escrow Reaches Specifically Pledged Collateral. .......................................... 7
        D.      Plaintiffs' Unjust Enrichment Claim and Constructive-Trust Remedy Are
                Properly Pled. ...................................................................................................... 8
        E.      The Guaranty Is Not Unconscionable. .................................................................. 9

V.      THE EQUITIES AND PUBLIC INTEREST FAVOR RELIEF. ..................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baron Assocs., LLC v. Garcia Grp. Enters., Inc.*,
   96 A.D.3d 793 (2012) ................................................................................................................10

*Di Leo v. Shin Shu*,
   30 F.R.D. 56 (S.D.N.Y. 1961) ......................................................................................................2

*Estee Lauder Cos. v. Batra*,
   430 F. Supp. 2d 158 (S.D.N.Y. 2006)........................................................................................10

*Grammenos v. Lemos*,
   457 F.2d 1067 (2d Cir. 1972).......................................................................................................2

*Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*,
   17 F. Supp. 2d 275 (S.D.N.Y. 1998)............................................................................................6

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*,
   527 U.S. 308 (1999)......................................................................................................................7

*In re Koreag, Controle et Revision S.A.*,
   961 F.2d 341 (2d Cir. 1992)..........................................................................................................9

*Pashaian v. Eccelston Props., Ltd.*,
   88 F.3d 77 (2d Cir. 1996) .............................................................................................................5

*Register.com, Inc. v. Verio, Inc.*,
   356 F.3d 393 (2d Cir. 2004)..........................................................................................................3

*Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*,
   679 F. App'x 33 (2d Cir. 2017) ....................................................................................................7

*The Seren Fashion Art & Interiors, LLC v. Property Manager John Henriques*,
   No. 150237/2024, 2024 WL 4753486 (N.Y. Sup. Ct. Nov. 08, 2024)........................................2

*Town & Country Linen Corp. v. Ingenious Designs LLC*,
   556 F. Supp. 3d 222 (S.D.N.Y. 2021)..........................................................................................9

**Statutes**

N.Y. U.C.C. § 9-610(a)...................................................................................................................5

U.C.C. § 9-610 ................................................................................................................................5

**Other Authorities**

Fed. R. Civ. P. 4(e)(1).................................................................................................................2

New York's Civil Practice Law and Rules ("CPLR") 308(2).........................................................2

Plaintiffs, A.R.I. Agent, LLC ("Agent") and Lights Out Enterprises Inc. ("Lights Out Enterprises," together with Agent, the "Plaintiffs") hereby submit their Reply (the "Reply") in Support of the Motion for (1) Temporary Restraining Order and (2) Order to Show Cause for a Preliminary Injunction (ECF No. 6) (the "Motion"), and in opposition to Defendant Shawne Merriman's ("Merriman") Response in Opposition to the Motion (ECF No. 20) (the "Opposition").

## I.    PRELIMINARY STATEMENT.

In the Motion, Plaintiffs sought contractually authorized relief: first, to halt Merriman's continuing breach of the Restrictive Covenants, including his campaign of false public statements holding himself out as a controlling officer and as owner of the Intellectual Property; and second, to preserve identifiable proceeds of the "Lights Out" Intellectual Property, the Collateral encumbered by A.R.I.'s perfected, first-priority security interest.

In response, Merriman mistakenly recasts this as a stale "debt-collection dispute" involving "quintessentially monetary" harm. (ECF No. 20 at 1-2.) As shown below, Merriman either concedes Plaintiffs' arguments or asserts positions contrary to settled law and to his own sworn pleading in the Nevada Action. Most fundamentally, his "commercial reasonableness" attack targets an Article 9 disposition that never occurred because A.R.I. voted the pledged equity through Merriman's irrevocable proxy rather than selling it. The Motion should be granted.

## II.    MERRIMAN WAS PROPERLY SERVED.

Merriman argues that the Court should not reach the merits of the Motion because Plaintiffs have not satisfied the threshold requirement of effecting service of process on Merriman. (ECF No. 20 at 4-5.) But Merriman relies on case law whereby Second Circuit courts determined service

1

insufficient when made at a location where the defendant ***did not reside***.[1] (*Id.*) That is not what happened here. Instead, Merriman was served at the same address he associated himself with in the Merriman Guaranty. (Merriman Guaranty, Preamble ("a natural person currently residing at 2877 Paradise Rd., Unit 406, Las Vegas, NV 89109"); Proof of Service.) Plaintiffs' process server properly effected service by attempting to serve Merriman at his residence and, when prevented from doing so by the building's concierge, leaving the Summons with the concierge. This procedure is compliant under federal and state law. *See* Fed. R. Civ. P. 4(e)(1). In turn, New York's Civil Practice Law and Rules ("CPLR") 308(2) authorizes substituted service by delivery to "a person of suitable age and discretion" at a defendant's "dwelling place or usual place of abode," followed by a mailing of the summons to that address. Plaintiffs have satisfied both steps. *See The Seren Fashion Art & Interiors, LLC v. Property Manager John Henriques*, No. 150237/2024, 2024 WL 4753486, at *2 (N.Y. Sup. Ct. Nov. 08, 2024) ("service upon a building's doorman or security guard falls within the contemplation of CPLR 308(2) alternative service.") The Proof of Service on Merriman's concierge was filed on May 12, 2026 (ECF No. 13-3) and the statutory mailing was made on May 20, 2026. Plaintiffs have properly effected service on Merriman.[2]

### III.    MERRIMAN'S OWN VERIFIED PLEADING DEFEATS HIS OPPOSITION.

#### A.    Merriman's Sworn Admissions Establish Irreparable Harm.

In the Motion, Plaintiffs established irreparable harm to goodwill, reputation, and business relationships. (ECF No. 6 at 15–17, 25–27.) Plaintiffs' showing does not rest on the Merriman Guaranty alone. Plaintiffs' documented injuries include: the cancelled February 7 and March 7,

---

[1] *Di Leo v. Shin Shu,* 30 F.R.D. 56, 57–58 (S.D.N.Y. 1961), and *Grammenos v. Lemos,* 457 F.2d 1067, 1071 (2d Cir. 1972), both involve improper service at a residence where the defendant did not actually reside.

[2] Plaintiffs have also served Defendant Lights Out Holdings LLC through its Registered Agent.

2026 ESPN broadcasts (ECF No. 6 at 15-16), the lost Office Beacon relationship (*id.* at 16-17), and Merriman's continuing, unauthorized claims of authority (Ellison Decl. ¶¶ 56–65, 91–97.)

As to his contention that the injuries are "quintessentially monetary" (ECF No. 20 at 11), Merriman's position contradicts his own sworn pleading in the Nevada Action. Merriman has already told a court, under oath, that the conduct at issue produces injury that "cannot adequately be remedied by compensatory damages" and "cannot be fully compensable by money damages . . . [and is] difficult to calculate."[3] (Nev. Compl. ¶¶ 99–100.) Merriman swore that the dispute over control of "Lights Out" causes "destruction of goodwill, loss of unique media opportunities, and jeopardy to third-party contracts." (*Id.* ¶ 41.) Instead, Plaintiffs' request for emergency relief is consistent with both Merriman's admissions and Second Circuit law. *See Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004) (affirming preliminary injunction when defendant would cause "irreparable harm through loss of reputation, goodwill, and business opportunities.")

### B.    The Emergency is Real and the Harm Is Ongoing.

In the Motion, Plaintiffs explained that their harm is immediate, ongoing, and warrants emergency relief. (ECF No. 6 at 17–18, 27–28.) Merriman responds that this is a "debt-collection dispute brought four months late" and that any disruption was "self-inflicted" by A.R.I.'s takeover. (ECF No. 20 at 2, 12.) But Merriman never addresses his ongoing public conduct, including his LinkedIn profile, the active www.ShopLightsOut.com sales, and the March 26, 2026 conference appearance billing him as "CEO" of Lights Out. Such conduct is both continuing and undisputed. Further, Merriman is wrong on both the timeline and the cause of the harm.

Upon A.R.I.'s assumption of control of Lights Out Enterprises in January 2026, Merriman began breaching the Restrictive Covenants, including through press releases and ongoing public

---

[3] The Nevada Action was also filed in violation of the forum-selection provisions of the Loan Agreement, Joinder, and Guaranties. (ECF No. 6 at 11.)

claims of authority. (Ellison Decl. ¶¶ 76, 91–98.) Moreover, the Company's distress did not originate with A.R.I.'s control. When A.R.I. assumed control, it discovered the Company had approximately $237 in cash on hand, maxed-out credit cards, roughly $500,000 in aged payables, and more than $2.3 million in accelerated secured debt. (*Id.* ¶ 60.) The operational pause on January 19, 2026, was "driven by the severely distressed financial condition in which Merriman had left the Company," compounded by "the disruption and uncertainty caused by Merriman's interference following his removal," not by the removal itself. (*Id.* ¶ 62.) Merriman cannot brand as "self-inflicted" the consequences of the financial collapse and the misinformation campaign he orchestrated, and which only came to light upon A.R.I.'s assumption of control. A.R.I. has also continued to discover obligations relating to the Company's pre-control condition. In May 2026, A.R.I. received a Delaware franchise-tax notice reflecting a total balance due of $171,733.75, including a previous balance of $123,753.96 carried forward from periods preceding A.R.I.'s assumption of control. (Supp. Ellison Decl. ¶¶ 10–12 & Ex. B.)[4] That carried-forward liability is further evidence that the Company's distress related to its pre-control condition.

Critically, the harm is present and continuing. A.R.I. "cannot resume" the Company's operations "while Merriman's interference continues." (Ellison Decl. ¶ 98.) Moreover, so long as Merriman continues to hold himself out to vendors, sponsors, and the press as the Company's CEO, he creates a live risk that a third party will deal with him in the reasonable but mistaken belief that he speaks for the Company, thereby exposing Plaintiffs to purported obligations Merriman has no authority to incur. Around fall 2025, Merriman represented to A.R.I. that Nike and Fanatics had used the "Lights Out" mark without authorization in a Major League Baseball marketing and merchandise campaign, that he regarded the matter as worth millions of dollars,

---

[4] The Supplemental Ellison Declaration is filed contemporaneously in support of the Reply.

and that he had previously resolved trademark claims with Nike for a substantial sum. (Supp. Ellison Decl. ¶¶ 4–5.) Merriman also forwarded correspondence reflecting his outreach to Fanatics regarding a potential license or commercial resolution and represented that the matter remained ongoing. (*Id.* ¶ 6.) By Merriman's own account, the "Lights Out" Intellectual Property carries significant enforcement and licensing value, and Merriman may already have received, or may be positioned to receive, consideration derived from that mark. (*Id.* ¶ 7.) Any such consideration would constitute proceeds of the "Lights Out" Intellectual Property and thus proceeds of A.R.I.'s Collateral. (*Id.* ¶ 9.) A removed guarantor who has twice declared bankruptcy "inevitable" and who may be collecting proceeds of the very Collateral securing A.R.I.'s interest is not a speculative risk, but a present one. Merriman is subject to a $4 million personal judgment and he carries further personal debts including the Mamdani Note and Trident Loan. (Ellison Decl. ¶¶ 44–45, 101–104.)

Merriman gives no response to the concrete dissipation risk. *See Pashaian v. Eccelston Props., Ltd.*, 88 F.3d 77, 87 (2d Cir. 1996) (citation omitted) ("[a] preliminary injunction may issue to preserve assets as security for a potential monetary judgment where the evidence shows that a party intends to frustrate any judgment on the merits by making it uncollectible.")

## IV.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.

### A.    The Proxy Is a Governance Right, Not an Article 9 Disposition.

In the Motion, Plaintiffs established that A.R.I. lawfully exercised the irrevocable proxy Merriman granted, removed him, and set new governance upon an Event of Default. (ECF No. 6 at 8–10.) Merriman responds that the exercise was "commercially unreasonable" under U.C.C. § 9-610. (ECF No. 20 at 7–8.) Merriman's position is clearly confused because the provision governs the ___*disposition*___ of collateral. *See* N.Y. U.C.C. § 9-610(a). But A.R.I. disposed of nothing. Instead, A.R.I. exercised the ___*irrevocable proxy*___ Merriman expressly granted in Section 4.2(a) of the Merriman Guaranty, which authorized A.R.I.—upon an Event of Default—to exercise "all voting,

corporate and other rights pertaining to such Investment Property . . . as if it were the absolute owner thereof," through a proxy "effective, automatically, upon an Event of Default." (Merriman Guaranty § 4.2(a).) Merriman appears to be confusing a bargained-for governance mechanism with a collateral sale. *See Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 17 F. Supp. 2d 275, 306 (S.D.N.Y. 1998) (holding that "commercially reasonable manner" carries a "special meaning under Article 9" that will not be imported into a transaction Article 9 does not govern.)

The provision Merriman invokes proves the distinction. Section 9.8 of the Loan Agreement—the only "commercial reasonableness" language cited in the Opposition (ECF No. 20 at 7)—addresses A.R.I.'s potential inability to "effect a public sale" of "Shares" and the possibility that it "may be compelled to resort to one or more private sales." Thus, Merriman's own provision confirms that the commercial reasonableness standard is triggered by a ***disposition***, of which there was none. The separate Warrant exercise was likewise not a disposition of pledged collateral. Through the Warrant, A.R.I. executed an equity investment in the Company for which A.R.I. paid more than $530,000 in cash. (Ellison Decl. ¶ 53.) Merriman's good-faith and unclean-hands theories, which depend on the same mischaracterization, accordingly fail. Further, Merriman's attack on the ***manner*** of exercise—"a single day," "without any sale process, valuation, or notice" (ECF No. 20 at 6)—fails for the same reason. Those are incidents of a disposition, of which there was none. Nor does the implied covenant of good faith help Merriman; it cannot override the express terms of § 4.2(a), which made the proxy "effective, automatically, upon an Event of Default" and let A.R.I. act "at [its] sole and absolute discretion." (Merriman Guaranty §§ 4.2(a), 4.2(d).) In any event, A.R.I. acted only after Merriman acknowledged his defaults in the Forbearance Agreement, breached it, and rejected roughly $500,000 in additional financing while declaring bankruptcy "inevitable." (Ellison Decl. ¶¶ 36–43.)

6

**B.    The Non-Disparagement Covenant Reaches Merriman's False Statements.**

In the Motion, Plaintiffs showed that Merriman's false public statements continue to breach the Non-Disparagement Provision of the Restrictive Covenants. (ECF No. 6 at 21–22.) Merriman responds that the statements are shielded because they "concern" the litigation. (ECF No. 20 at 10–11.) Merriman's argument fails because the Non-Disparagement Provision reaches knowingly false factual representations, including: (1) that Merriman remains "CEO" of Lights Out Enterprises and (2) that the Company (rather than Merriman alone) is the plaintiff in the Nevada Action. (Ellison Decl. ¶¶ 76, 82–87.) Those representations are indisputably false. Merriman was removed from all offices in January 2026, and he is the sole plaintiff in Nevada (as confirmed by his own *verified* complaint). (Nev. Compl. ¶¶ 1, 13.) As opposed to a temporary restraining order founded upon a claim for defamation, the Second Circuit will enforce non-disparagement covenants against such false and misleading speech. *See Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, 679 F. App'x 33, 36 (2d Cir. 2017) ("[Defendants'] argument fails because the injunction's prohibition on speech that is false, misleading, defamatory, or disparaging effectively enforces defendants' own covenant not to engage in such speech.")

**C.    The Escrow Reaches Specifically Pledged Collateral.**

In the Motion, Plaintiffs sought to preserve identifiable proceeds of the "Lights Out" Intellectual Property, which is part of the Collateral subject to A.R.I.'s perfected, first-priority security interest. (ECF No. 6 at 23–24.) Merriman responds that this is a forbidden asset freeze under *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 333 (1999).

7

(ECF No. 20 at 12.) But *Grupo Mexicano* bars only a general freeze where the plaintiff ***claims no lien or equitable interest***.[5] A.R.I. holds exactly such an interest in this specific asset.

Here, A.R.I. holds a perfected, first-priority security interest in the "Lights Out" Intellectual Property, including "all products and proceeds" thereof, which Merriman pledged on Schedule A of the Merriman Guaranty. (Merriman Guaranty § 5.1). In fact, A.R.I. recorded its interest with the USPTO. (Ellison Decl. ¶¶ 23–25 & Exs. F–G.) The requested escrow, therefore, reaches only identifiable proceeds of that specific asset—not Merriman's assets generally. Relief preserving proceeds of pledged collateral in which the movant holds a security interest falls within *Grupo Mexicano*'s recognized exception to the general rule regarding money judgment. Further, Merriman's disclosures relating to Nike and Fanatics underscore the point. Any consideration Merriman obtains from the alleged use of the "Lights Out" mark would be identifiable proceeds of the specific Collateral in which A.R.I. holds a perfected interest. (Supp. Ellison Decl. ¶¶ 4–9.)

### D.    Plaintiffs' Unjust Enrichment Claim and Constructive-Trust Remedy Are Properly Pled.

Beyond the escrow relief, Merriman's challenge to the unjust-enrichment and constructive-trust theory misstates the law twice. First, he argues the claim is barred because contracts govern the same subject matter. (ECF No. 20 at 9.) But Plaintiffs do not seek quasi-contractual recovery of amounts owed under the Loan Agreement or Guaranty. Those are enforced as written. The enrichment is distinct—having lost authority over the "Lights Out" Intellectual Property when A.R.I. exercised its proxy rights, Merriman continues to exploit that Collateral for personal profit by retaining proceeds he has no right to keep. No contract entitles Merriman to monetize, post-removal, collateral he no longer controls. That obligation arises in equity. Second, Merriman

---

[5]Merriman confirms same: "(district court has no authority to enjoin a defendant from disposing of assets pending adjudication of a contract claim for money damages ***where the plaintiff claims no lien or equitable interest in those assets***)." (ECF No. 20 at 12) (emphasis added).

8

argues that no constructive trust can issue absent a fiduciary relationship. (ECF No. 20 at 9.) That inverts the doctrine. A constructive trust is a *remedy* for unjust enrichment, by which a court compels an unjustly enriched party to surrender identifiable proceeds, and it attaches to the wrongfully retained property regardless of any relationship between the parties. *See In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 353–54 (2d Cir. 1992) ("the New York Court of Appeals has expressly stated that a person wrongfully acquiring property can be treated as a constructive trustee notwithstanding the lack of a fiduciary relationship.")

### E.    The Guaranty Is Not Unconscionable.

In the Motion, Plaintiffs established the Merriman Guaranty as a freely negotiated agreement between sophisticated parties. Merriman responds that his Guaranty is substantively unconscionable. (ECF No. 20 at 9–10.) But Merriman cites *no* authority applying the doctrine to facts resembling these. He provides no response as to how a negotiated package of ordinary secured-lending protections should shock the judicial conscience. Merriman—a sophisticated businessman—negotiated and signed the Guaranties in exchange for substantial financing. (Ellison Decl. ¶¶ 16-18; 28-30.) In the instrument itself, Merriman acknowledged that the Restrictive Covenants are "reasonable and necessary," and were "a material inducement" for the Loan. (Merriman Guaranty §§ 5.4(z), 5.4(ii).) New York reserves substantive unconscionability for terms "so outrageously unfair as to shock the judicial conscience." *Town & Country Linen Corp. v. Ingenious Designs LLC*, 556 F. Supp. 3d 222, 297 (S.D.N.Y. 2021). A default proxy, an irreparable-harm acknowledgment, and a bond waiver do not approach that standard and Merriman provides no authority to the contrary. Merriman's unconscionability argument also fails for want of any evidentiary support. His Declaration is conclusory and identifies no facts regarding the negotiation, his sophistication, or the supposedly oppressive terms of the Loan Agreement or Guaranties. In short, conclusory assertions unsupported by evidence cannot defeat a motion supported by

competent declarations. *See Baron Assocs., LLC v. Garcia Grp. Enters., Inc.*, 96 A.D.3d 793, 794 (2012) ("The conclusory and unsubstantiated assertions in the [defendant's affidavit], submitted in opposition to the motion, failed to raise a triable issue of fact as to whether the terms of the mortgage, note, and guaranty were unconscionable, or as to whether the plaintiffs acted unconscionably in the transaction.")

## V.    THE EQUITIES AND PUBLIC INTEREST FAVOR RELIEF.

The balance of equities and public interest favor relief. (ECF No. 6 at 28–30.) Plaintiffs face ongoing, compounding injuries to reputation and goodwill that Merriman himself has sworn are irreparable, while Merriman is asked only to honor commitments he made: to cease disparagement, to stop holding himself out as an officer of the Company from which he was lawfully removed, and to preserve proceeds of the pledged Collateral. The public interest favors enforcing freely negotiated covenants and preventing third parties from being misled into transacting with one who lacks authority to bind the Company. *See Estee Lauder Cos. v. Batra*, 430 F. Supp. 2d 158, 173 (S.D.N.Y. 2006).

For the foregoing reasons, and those set forth in the Motion, Plaintiffs respectfully request that the Court grant the Motion and enter the requested Temporary Restraining Order.

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

By: /s/ *Daniel Filor*
Daniel P. Filor
One Vanderbilt Avenue
New York, New York 10017
Telephone: 212.801.9200
Email: filord@gtlaw.com

Joel E. Tasca, Esq. (Pro Hac Vice forthcoming)
Nevada Bar No. 14124
10845 Griffith Peak Drive, Suite 600

Las Vegas, NV 89135
Telephone: 702.792.3773
Email: Joel.Tasca@gtlaw.com

S. Mohsin Reza, Esq. (Pro Hac Vice
forthcoming)
Virginia Bar No. 75347
1750 Tysons Boulevard, Suite 1000
McLean, VA 22102
Telephone: 703.749.1300
Email: Mohsin.Reza@gtlaw.com

Ben Fechter, Esq. (Pro Hac Vice forthcoming)
Florida Bar No. 1011632
333 S.E. 2nd Avenue, Suite 4400
Miami, FL 33131
Telephone: 305.579.0500
Email: Ben.Fechter@gtlaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of May 2026, I caused a copy of the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which then sent a notice of filing (NEF) to the parties of record.

*/s/ Daniel Filor*

11