**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| A.R.I. AGENT, LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SHAWNE MERRIMAN, et al.<br><br>Defendants. | Civil Action No. 26-cv-03778-JAV<br><br>ORAL ARGUMENT REQUESTED |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO JOIN A.R.I. SENIOR SECURED GROWTH CREDIT FUND, LP UNDER RULE 19, AND PARTIAL MOTION TO DISMISS COUNT III OF THE SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................1

RELEVANT BACKGROUND ....................3

I. The Loan Documents and the Parties' Relationship ....................3

II. Count III of the Amended Complaint and Defendants' First Partial Motion to Dismiss...7

III. Plaintiffs' Non-Defense and Filing of the Second Amended Complaint....................7

IV. Plaintiffs' Amendments to the Second Amended Complaint Do Not Cure Count III's Deficiencies and Do Not Defeat Defendants' Argument for Joinder ....................8

A. What Plaintiffs Changed ....................8

B. Plaintiffs' Changes Do Not Cure Count III's Defects ....................9

C. Plaintiffs' New Allegations Do Not Defeat Joinder ....................10

LEGAL STANDARD....................10

I. Federal Rule of Civil Procedure 19....................10

II. Federal Rule of Civil Procedure 12(b)(6) ....................11

III. A Fraud Claim Duplicative of a Contract Claim Must Be Dismissed ....................11

ARGUMENT....................12

I. CREDIT FUND MUST BE JOINED AS A REQUIRED PARTY UNDER RULE 19..12

A. In Credit Fund's Absence, the Court Cannot Accord Complete Relief Among the Existing Parties ....................13

B. Litigating this Action Would Determine Credit Fund's Rights Under the Relevant Contract....................14

C. Plaintiffs' Claims for Equitable Relief Independently Require Credit Fund's Presence ....................15

D. A.R.I. Agent's Authority Does Not Extend to Credit Fund's Potential Tort Claims ....................16

E. Joinder Is Feasible and Will Not Defeat Diversity ....................17

II. A.R.I. AGENT'S FRAUD CLAIM REMAINS DUPLICATIVE OF ITS CONTRACT CLAIM AND THEREFORE MUST BE DISMISSED....................18

A. Plaintiffs Identify No Legal Duty Independent of the Contract ....................19

B. The Alleged Misrepresentations Are Not Collateral or Extraneous—They Track the Contract's Representations and Warranties .................................................... 21

C. Plaintiffs Still Fail to Plead Fraud-Only "Special Damages" ............................... 23

D. In the Alternative, Count III Must Be Dismissed Because A.R.I. Agent Lacks Authority to Assert a Fraud Claim That Belongs to Credit Fund ......................... 25

CONCLUSION.......................................................................................................................25

**TABLE OF AUTHORITIES**

*Almeciga v. Ctr. for Investigative Reporting, Inc.*,
185 F. Supp. 3d 401 (S.D.N.Y. 2016)....................11, 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................11

*Baldwin v. Interscope Records, Inc.*,
No. 19-cv-8923, 2021 U.S. Dist. LEXIS 41733 (S.D.N.Y. Mar. 4, 2021)....................14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................11

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs.*,
98 F.3d 13 (2d Cir. 1996).................... *passim*

*Chalfin v. Go Big Solar, LLC*,
No. 24 Civ. 4768, 2025 U.S. Dist. LEXIS 136996 (S.D.N.Y. July 17, 2025)....................12

*Congress Fin. Corp. v. John Morrell & Co.*,
790 F. Supp. 459 (S.D.N.Y. 1992)....................20

*Delcon Constr. Corp. v. United States HUD*,
205 F.R.D. 145 (S.D.N.Y. 2002)....................14

*E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*,
160 F.3d 925 (2d Cir. 1998)....................17, 18

*First Hill Partners, LLC v. Bluecrest Cap. Mgmt. Ltd.*,
52 F. Supp. 3d 625 (S.D.N.Y. 2014)....................20

*Fund L.P. v. Alethea Tech. PTE Ltd.*,
No. 25 Civ. 2066, 2025 U.S. Dist. LEXIS 220402 (S.D.N.Y. Nov. 7, 2025)....................18

*Global Discount Travel Services, LLC v. TWA*,
960 F. Supp. 701 (S.D.N.Y. 1997)....................13

*Imperatore v. Putnam Lovell NBF Sec. Inc.*,
No. 05 CV 4966, 2006 U.S. Dist. LEXIS 10598 (S.D.N.Y. Mar. 15, 2006)....................19

*Kermanshah v. Kermanshah*,
No. 08-CV-409, 2010 U.S. Dist. LEXIS 45896 (S.D.N.Y. May 11, 2010)....................15

*Kregos v. AP*,
3 F.3d 656 (2d Cir. 1993)....................23

*Kriegel v. Donelli*,
No. 11 Civ. 9160, 2014 U.S. Dist. LEXIS 90086 (S.D.N.Y. June 30, 2014)..........................18

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
797 F.3d 160 (2d Cir. 2015)..................................................................................................11

*Low v. Robb*,
No. 11-CV-2321, 2012 U.S. Dist. LEXIS 6836 (S.D.N.Y. Jan. 20, 2012) ............................12

*Maricultura Del Norte, S. DE R.L. DE C.V. v. Worldbusiness Capital, Inc.*,
159 F. Supp. 3d 368 (S.D.N.Y. Nov. 24, 2015).....................................................................24

*Morgan v. Cnty. of Warren*,
No. 22-345, 2022 U.S. App. LEXIS 29497 (2d Cir. Oct. 24, 2022) ......................................11

*Murphy v. Virda Netco Establishment*,
No. 19 Civ. 5198, 2020 U.S. Dist. LEXIS 37818 (S.D.N.Y. Mar. 3, 2020) ...........................15

*Nat'l Union Fire Ins. Co. v. Monarch Payroll, Inc.*,
No. 15-cv-3642, 2016 U.S. Dist. LEXIS 19077 (S.D.N.Y. Feb. 17, 2016)............................25

*Ostano Commerzanstalt v. Telewide Sys., Inc.*,
794 F.2d 763 (2d Cir. 1986)..................................................................................................24

*Pasternak v. Dow Kim*,
961 F. Supp. 2d 593 (S.D.N.Y. Aug. 9, 2013).......................................................................24

*Phhhoto Inc. v. Meta Platforms, Inc.*,
123 F.4th 592 (2d Cir. 2024)..................................................................................................20

*Presnall v. Analogic Corp.*,
No. 17-cv-6662, 2018 U.S. Dist. LEXIS 159250 (S.D.N.Y. Sept. 18, 2018) .........................12

*Ritchie Capital Mgmt., L.L.C. v. Coventry First LLC*,
No. 07 Civ. 3494, 2007 U.S. Dist. LEXIS 51081 (S.D.N.Y. Jul. 17, 2007) ...........................22

*Seagrape Invs. LLC v. Kaleil Isaza Tuzman*,
No. 21-cv-7517, 2025 U.S. Dist. LEXIS 180467 (S.D.N.Y. Sept. 15, 2025) .........................14

*Student Advantage Fund I LLC v. Kennedy Lewis Mgmt. LP*,
No. 19-cv-2401, 2019 U.S. Dist. LEXIS 199892 (S.D.N.Y. Nov. 18, 2019)..........................22

*TMT Co. v. JPMorgan Chase Bank*,
No. 16 Civ. 8757, 2019 U.S. Dist. LEXIS 55694 (S.D.N.Y. Mar. 28, 2019)..........................10

*TN Metro Holdings I, LLC v. Commonwealth Ins. Co.*,
No. 11-CV-06063, 2014 U.S. Dist. LEXIS 145943 (S.D.N.Y. Sept. 30, 2014)......................12

*W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*,
549 F.3d 100 (2d Cir. 2008)....25

**Other Authorities**

Fed. R. Civ. P. 8(d)(2)....9, 24

Fed. R. Civ. P. 12(b)(6)....1, 11

Fed. R. Civ. P. 17....10

Fed. R. Civ. P. 19....1, 8, 9, 10

Fed. R. Civ. P. 19(a)....13, 14

Fed. R. Civ. P. 19(a)(1)....2, 10, 11, 13

Fed. R. Civ. P. 19(a)(1)(A)....13

Fed. R. Civ. P. 19(a)(1)(B)(ii)....16

Fed. R. Civ. P. 19(a)(2)....11, 18

Fed. R. Civ. P. 19(b)....11

Defendants Shawne Merriman ("Mr. Merriman"), individually, and as Trustee of Trust M250124 (the "Trust"), and Lights Out Holdings LLC, a California limited liability company ("Lights Out Holdings (CA)") (collectively "Defendants") respectfully submit this memorandum of law in support of their motion to join A.R.I. Senior Secured Growth Credit Fund, LP pursuant to Rule 19 of the Federal Rules of Civil Procedure. Mr. Merriman and the Trust further respectfully move to dismiss Count III (Fraud, Fraudulent Inducement, and Fraudulent Concealment) of the Second Amended Complaint (the "SAC") filed on September 18, 2026 by Plaintiffs A.R.I. Agent LLC ("A.R.I. Agent," "A.R.I.," or "Agent"), Lights Out Enterprises Inc. ("Lights Out Enterprises" or the "Company"), and Lights Out Holdings LLC, a Wyoming limited liability company ("Lights Out Holdings (WY)") (collectively, "Plaintiffs"), which Plaintiffs assert against Mr. Merriman and the Trust, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Defendants bring a renewed, single, and unified motion on two independent grounds. First, Defendants move to join A.R.I. Senior Secured Growth Credit Fund, LP ("Credit Fund")—the sole Lender under the Loan and Security Agreement (the "LSA") and the party that committed every dollar of the loan at issue—as a required party under Rule 19 of the Federal Rules of Civil Procedure. Second, Mr. Merriman and the Trust move under Rule 12(b)(6) to dismiss Count III (Fraud, Fraudulent Inducement, and Fraudulent Concealment) of the SAC.

Credit Fund is not before this Court, yet this action cannot be resolved without adjudicating Credit Fund's rights. A.R.I. Agent signed the LSA solely as administrative agent and collateral agent for the Lenders—that is, for Credit Fund—and both the debt and the Collateral run to A.R.I. Agent "for the ratable benefit of Lenders." Ex. A §§ 2.1, 4.1, 9.4. Plaintiffs nonetheless ask this Court to reduce the Obligations to judgment, declare the lien on the "Lights Out" Intellectual

Property valid and first in priority, authorize foreclosure, impress a constructive trust, and compel an accounting—relief that would fix the rights of the Lender for whose "ratable benefit" the Collateral is held—in a proceeding to which that Lender is not a party. Under Rule 19(a)(1), the Court cannot accord complete relief among the existing parties in Credit Fund's absence, and proceeding without it would both impair Credit Fund's ability to protect its interests and expose Defendants to a substantial risk of double, multiple, or inconsistent obligations on the same agreements.

Separately, and regardless of whether Credit Fund is joined, Count III of the SAC must be dismissed. This is Plaintiffs' second attempt to plead a fraud claim that can survive dismissal, and it fails for the same fundamental reason the first did: Count III remains a breach-of-contract claim dressed up as fraud. The procedural history confirms as much. On August 24, 2026, Defendants moved to dismiss Count III (then styled "Fraud and Fraudulent Concealment") of the Amended Complaint (the "(Am. Compl.")), arguing that it was duplicative of A.R.I.'s breach-of-contract claim. ECF No. 68. Rather than defend Count III on the merits, Plaintiffs sought leave to file a second amended complaint. ECF No. 71.[1] The repleaded Count III—now expanded to "Fraud, Fraudulent Inducement, and Fraudulent Concealment," SAC ¶¶ 252–265—is the product of that do-over.

Despite a new label and new paragraphs, Plaintiffs have changed form, not substance. The misrepresentations and omissions on which Count III rests still track the representations, warranties, and reporting covenants of the LSA, the Joinder, and the Guaranties. Under settled New York law, a fraud claim asserted alongside a breach-of-contract claim must be dismissed

[1] And, eventually, in its Opposition to Defendants' initial motion, Plaintiffs argued only that the motion was moot in light of their proposed amendment. ECF No. 75.

unless the plaintiff pleads (i) a legal duty separate from the duty to perform under the contract, (ii) a fraudulent misrepresentation collateral or extraneous to the contract, or (iii) special damages proximately caused by the fraud and unrecoverable as contract damages. *See Bridgestone/Firestone, Inc. v. Recovery Credit Servs.*, 98 F.3d 13, 19–20 (2d Cir. 1996). Plaintiffs' amendments to Count III were engineered to show each of these three exceptions. But every new allegation is conclusory, contradicted by the factual narrative Plaintiffs reallege, or legally insufficient.

Count III is duplicative of Count I. Plaintiffs have now had two opportunities to plead otherwise and have failed both times. Under New York law, such a claim cannot survive a motion to dismiss.

## RELEVANT BACKGROUND[2]

### I. The Loan Documents and the Parties' Relationship

Shawne Merriman is a former NFL All-Pro linebacker. Merriman Decl. ¶ 2 (ECF No. 22). In 2019, Mr. Merriman founded the Lights Out Xtreme Fighting business, which operates through Lights Out XF, Inc. ("Lights Out XF")—an entity he founded in the mixed martial arts and entertainment space. SAC. ¶ 2; Merriman Decl. ¶¶ 2–3. On May 13, 2024, three parties entered into a Loan and Security Agreement (the "LSA"): Lights Out XF, as Borrower; Credit Fund, as

[2] Defendants accept the well-pleaded facts of the SAC as true, as they must, for purposes of this Motion to Dismiss only.

the sole Lender; and A.R.I. Agent, as administrative agent and collateral agent for Credit Fund.[3] SAC ¶¶ 2, 76; Ex. A to Ellison Decl.[4] Credit Fund is not a party to this action.

Under the LSA, the funding obligation belongs to Credit Fund alone. Section 2.2(a)(i) of the LSA provides that "the Lenders agree, severally and not jointly, to make a term loan to Borrowers on the Closing Date in an aggregate amount of Nine Hundred Fifty Thousand Dollars ($950,000) according to each Lender's Term Loan Commitment as set forth on Schedule 1 hereto." Ex. A § 2.2(a)(i).[5] Schedule 1 of the LSA assigns the entire Term Loan Commitment to Credit Fund. Ex. A, Schedule 1. Section 2.1 of the LSA ("Loan and Terms of Payment"; "Promise to Pay") provides that Borrower "promises to pay Agent, *for the ratable benefit of Lenders*, the outstanding principal amount of all Loans, accrued and unpaid interest, fees and charges thereon and all other amounts owing hereunder as and when due in accordance with this Agreement" (emphasis added). Ex. A § 2.1. Section 4.1 of the LSA ("Grant of Security Interest") provides that each Loan Party grants "to Agent, for itself and the ratable benefit of Lenders" a continuing security interest in, and pledges to Agent, "the Collateral, wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof." Ex. A § 4.1. Section 8 defines what constitutes an Event of Default, including payment default, covenant default, and misrepresentations (§§ 8.1, 8.2, 8.8), and Section 9.4 provides that if an Event of Default has

[3] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the LSA or the SAC, as applicable.

[4] All exhibits cited herein refer to exhibits to the Declaration of Zack Ellison in Support of Plaintiffs' Motion for Temporary Restraining Order and Order to Show Cause for a Preliminary Injunction dated May 7, 2026. ECF No. 7.

[5] The LSA provided for an initial loan of $950,000, which was upsized to $1,000,000 on July 15, 2024. SAC ¶ 77. Mr. Merriman later acknowledged Obligations of $2,108,643.50 as of August 27, 2025, which A.R.I. Agent alleges exceeded $2.5 million by the time it filed the Second Amended Complaint. SAC ¶¶ 51, 139.

occurred and is continuing, the Agent shall have the right to apply any funds in its possession—including proceeds of any disposition of the Collateral—to the Obligations "for the ratable benefit of Lenders." Ex. A §§ 8, 9.4.

Other relevant provisions in the LSA include Section 5, which sets forth representations and warranties, including good title to the Collateral free of Liens other than Permitted Liens, the absence of unreflected material liabilities in the financial statements, and the completeness of disclosures; Section 4.2 requires that the security interest be and remain a first priority perfected security interest; Sections 7.4 and 7.5 prohibit unpermitted indebtedness and Liens; and Section 6.2 addresses providing financial statements, reports and certificates. Ex. A §§ 4.2, 5.2(a), 5.5, 5.13, 6.2, 7.4, 7.5.

On December 31, 2024, four new Guarantors and A.R.I. Agent executed Joinder No. 1 to the Loan and Security Agreement (the "Joinder"). The "New Guarantors" were Lights Out Holdings LLC (WY), Lights Out Pro LLC, Lights Out Sports LLC, and M250124, each signing through Mr. Merriman as its Chief Executive Officer. A.R.I. Agent signed "in its capacity as administrative agent and collateral agent." SAC ¶¶ 16–17, 106. Ex. B ¶ A. The "New Guarantors" became parties to the LSA and reaffirmed its representations and warranties. SAC ¶¶ 106, 108–111.

The Joinder recites that "the Lenders have agreed to make or issue loans and other certain financial accommodations," that "initially capitalized terms used herein but not defined herein shall have the meanings ascribed to such terms in the Loan Agreement"—that is, "Lenders" means Credit Fund. Ex. B, at 1 (recitals).

Also on December 31, 2024, Mr. Merriman and the Trust, as Guarantors, and A.R.I. Agent, as administrative agent and collateral agent for the Lenders, entered into separate Guaranty

Agreements. SAC ¶¶ 18, 103; Ex. C (Mr. Merriman), Ex. D (the Trust). On June 29, 2025, Mr. Merriman and A.R.I. Agent entered into the Amended and Restated Personal Guaranty (together with the December 31, 2024 Guaranty Agreements, the "Guaranties"). SAC ¶¶ 22–24, 122; Ex. H. Section 4.1 of the Guaranties ("Security Interest; Collateral") provides that Guarantor pledges and grants "to Agent (for the ratable benefit of itself and the Lenders)" a lien on, and continuing security interest in its Guarantor Collateral. Exs. C, D, H §§ 4.1.

As part of the same December 2024 package, Lights Out Holdings (WY), acting through Mr. Merriman, executed a Perfection Certificate and Legal Diligence Request (the "Perfection Certificate") representing that it owned the "Lights Out" Intellectual Property, together with an Intellectual Property Security Agreement granting A.R.I. all of Lights Out Holdings (WY)'s right, title, and interest in the Intellectual Property. SAC ¶¶ 19–20, 123–126.

On September 25, 2025, Lights Out XF failed to repay $300,000 in matured principal when due. SAC ¶¶ 29, 142. On November 25, 2025, the Loan Parties entered into the Fifth Amendment to Loan and Security Agreement and Forbearance Agreement (the "Forbearance Agreement"). SAC ¶¶ 33, 147. Credit Fund signed as "Lenders," and A.R.I. Agent signed as "Agent." Ex. K, at 11. The Forbearance Agreement expressly preserved the rights and remedies of the Agent and the Lenders in connection with the LSA or any Loan Document. Ex. K §§ 3.1, 7.1.3.

On January 2, 2026, A.R.I. Agent and Credit Fund jointly issued a Notice of Default identifying Events of Default, accelerating all outstanding payment Obligations, and demanding immediate payment. SAC ¶¶ 153–154; Ex. M, at 2–3. The Notice of Default provides that Agent and the Lenders reserve the right "to commence any legal or other action to collect any or all of the Obligations from any or all of the Loan Parties and any other Person liable therefor and/or any Collateral." Ex. M, at 4. It also states that "Agent and/or any Lender may exercise their rights,

powers, privileges and remedies ... at any time in its sole and absolute discretion without further notice." Ex. M, at 4. A.R.I. Agent filed the operative Second Amended Complaint "in its capacity as administrative and collateral agent for the Lenders." SAC ¶ 54.

## II. Count III of the Amended Complaint and Defendants' First Partial Motion to Dismiss

As originally pleaded, Count III of the Amended Complaint, styled "Fraud and Fraudulent Concealment" (Am. Compl. ¶¶ 241–248), rested on six categories of alleged misrepresentation and omission—concerning the Mamdani Note, the Collateral and Intellectual Property, the Trident Loan, the Fattorini Judgment, the Company's financial condition, and the diversion of Loan proceeds. Critically, A.R.I. conceded that Mr. Merriman's "affirmative duties to disclose" arose "pursuant to the reporting and disclosure requirements under the Loan Agreement and the Guaranties." Am. Compl. ¶ 244.

On August 24, 2026, Defendants moved to dismiss Count III as duplicative of A.R.I.'s breach-of-contract claim, on the grounds that that A.R.I. satisfied none of the three recognized *Bridgestone/Firestone* exceptions: it pleaded no legal duty separate from the duty to perform, no collateral or extraneous misrepresentation, and no special damages unrecoverable in contract. Defendants separately reserved a challenge to the reliance element of a fraud claim under LSA § 12.18(f).

## III. Plaintiffs' Non-Defense and Filing of the Second Amended Complaint

Plaintiffs did not defend Count III on the merits in its Opposition to Defendants' initial motion to dismiss. Instead, they argued only that Defendants' motion was moot in light of their recent motion for leave to file the SAC and purported to "reserve all rights." ECF No. 75 at 17. After the Court granted leave, Plaintiffs filed the SAC on September 18, 2026, repleading Count III as "Fraud, Fraudulent Inducement, and Fraudulent Concealment." SAC ¶¶ 252–265.

Accordingly, Defendants' reply to the initial motion to dismiss addressed only the Rule 19 joinder issue and Defendants expressly reserved the right to move to dismiss the SAC.

## IV. Plaintiffs' Amendments to the Second Amended Complaint Do Not Cure Count III's Deficiencies and Do Not Defeat Defendants' Argument for Joinder

### A. <u>What Plaintiffs Changed</u>

A comparison of Count III, between the Amended Complaint and the SAC, shows that Plaintiffs made eight principal changes:

1. They added "Fraudulent Inducement" to the claim.

2. They added an express "separate and apart from Count I" framing and a three-part theory of why the alleged misrepresentations or omissions are independent of the relevant contracts. SAC ¶¶ 253–254.

3. They added purported "pre-closing diligence misrepresentations (February–May 2024)" said to predate any contract. SAC ¶ 255(i).

4. They added the Perfection Certificate's certification of Intellectual Property ownership as a possible misrepresentation. SAC ¶ 255(vi).

5. They added an "independent duty to disclose" paragraph, identifying four purported sources of Merriman's duties arising separate from the contract—superior knowledge and special facts, partial disclosure, affirmative acts of concealment, and a general duty—and expressly disclaimed reliance on the contracts' reporting covenants as to Count III. SAC ¶ 256.

6. They added an anti-reliance rejoinder asserting that "[n]o provision of the Loan Agreement, the Joinder, or the Guaranties disclaims A.R.I.'s reliance on representations made to it by the Loan Parties, by Merriman, or by the Trust." SAC ¶ 262.

7. They re-packaged their contract-based damages as fraud-only "out-of-pocket losses," including more than $530,000 in new cash equity capital, pleading these damages in the alternative under Fed. R. Civ. P. 8(d)(2). SAC ¶ 263.

8. They deleted the Amended Complaint's concession that Mr. Merriman's duties to disclose arose under the Loan Agreement and the Guaranties. *Compare* Am. Compl. ¶ 244 with SAC ¶ 256.

Plaintiffs' amendments were not confined to Count III. The SAC also added a series of new allegations aimed squarely at Defendants' motion to join Credit Fund, in an apparent effort to plead around Rule 19. In new paragraphs 54 through 56, Plaintiffs now allege (a) that Section 12.18 of the LSA is "solely for the benefit of A.R.I. Agent and Lenders" and that "no Loan Party nor any other Person shall have any rights as a third party beneficiary;" (b) that Credit Fund, though the sole Lender, "claims no interest in the subject matter of this action separate from the interests A.R.I. asserts here for its ratable benefit" and "holds no Lien, Proxy Rights, or Warrant of its own;" (c) that, under Section 12.18(n) of the LSA, "complete relief can [] be accorded among the existing parties, and Defendants face no risk of double or inconsistent obligations;" and (d) that whatever interest Credit Fund holds "is adequately represented by A.R.I. in this action." SAC ¶¶ 54–56.

B. <u>Plaintiffs' Changes Do Not Cure Count III's Defects</u>

None of these changes alter the character of Count III, as the Argument below demonstrates. First, the core alleged misrepresentations are unchanged and still track the LSA's representations, warranties, and covenants. *See infra* Argument Section II(B). Second, the itemized damages are either the same recovery sought in Count I, not proximately caused by any misrepresentation, or speculative—and pleading them "in the alternative" cannot rescue a claim that is duplicative on its face. *See infra* Argument Section II(C). Third, Plaintiffs cannot prove

any duties independent of the contract. *See infra* Argument Section II(A). Relabeling and repackaging do not transform a contract claim into a tort.

C. Plaintiffs' New Allegations Do Not Defeat Joinder

Plaintiffs' new joinder-directed allegations fare no better. A plaintiff cannot plead its way out of Rule 19 by inserting self-serving recitals that an absent party "claims no interest" and is "adequately represented." SAC ¶ 55. Whether Credit Fund is a required party turns on the operative facts and the relief sought, not on Plaintiffs' characterizations of them. Indeed, the same paragraphs confirm the very facts that compel joinder: Credit Fund is the sole Lender, the party to the LSA that committed every dollar of the loan, and the beneficial owner for whose "ratable benefit" the Obligations and Collateral are held. SAC ¶¶ 54–55. That A.R.I. Agent is authorized to enforce the Loan Documents in its own name answers a question under Rule 17—who may sue—not the question under Rule 19—who must be joined. And Plaintiffs' assertions that "complete relief can [] be accorded" and that Defendants face "no risk of double or inconsistent obligations" state the contested merits of the motion, not a reason to deny it. SAC ¶ 55. As the Argument below demonstrates, the relief Plaintiffs seek would fix rights in Collateral held for Credit Fund's benefit, the LSA neither bars nor reaches the common-law claims Credit Fund may hold in its own right, and A.R.I. Agent's authority as agent does not extend to those claims. *See infra* Argument Section I.

## LEGAL STANDARD

### I. Federal Rule of Civil Procedure 19

Rule 19(a)(1) sets forth three situations in which a person qualifies as a necessary party. *TMT Co. v. JPMorgan Chase Bank*, No. 16 Civ. 8757, 2019 U.S. Dist. LEXIS 55694, at *9–10 (S.D.N.Y. Mar. 28, 2019). Under Rule 19(a)(1), a person whose joinder will not deprive the court of subject-matter jurisdiction must be joined if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). If the court determines that an absent person is required, Rule 19(a)(2) directs that "the court must order that the person be made a party." Rule 19(b) addresses the court's considerations for dismissal if a "person who is required to be joined if feasible cannot be joined."

## II. Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Where the complaint pleads facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Morgan v. Cnty. of Warren*, No. 22-345, 2022 U.S. App. LEXIS 29497, at *3 (2d Cir. Oct. 24, 2022) (citing *Iqbal*, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## III. A Fraud Claim Duplicative of a Contract Claim Must Be Dismissed

Separately, to plead fraud, a plaintiff must allege "(1) a material misrepresentation or omission of a fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 170 (2d Cir. 2015). To plead fraudulent concealment, a plaintiff must allege "(1) that the defendant failed to meet its duty to disclose . . . (2) that the defendant had an intent to defraud or scienter, (3) [that] there was reliance on the part of the plaintiff, and (4)

damages." *Almeciga v. Ctr. for Investigative Reporting, Inc.*, 185 F. Supp. 3d 401, 411–12 (S.D.N.Y. 2016).

Where a fraud claim is brought alongside a breach-of-contract claim, the fraud claim must be dismissed if it is not sufficiently distinct from the contract claim. *See Bridgestone/Firestone*, 98 F.3d at 19–20 (reversing fraud finding); *Low v. Robb*, No. 11-CV-2321, 2012 U.S. Dist. LEXIS 6836, at *13 (S.D.N.Y. Jan. 20, 2012) ("[P]laintiff may not maintain a fraud claim that is merely a restated claim for a breach of contract."); *Presnall v. Analogic Corp.*, No. 17-cv-6662, 2018 U.S. Dist. LEXIS 159250, at *18 (S.D.N.Y. Sept. 18, 2018) ("[I]f the promise concerned the performance of the contract itself, the fraud claim is subject to dismissal as duplicative.").

Specifically, a fraud claim brought with a contract claim is duplicative unless the plaintiff (i) demonstrates a legal duty separate from the duty to perform under the contract; (ii) demonstrates a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seeks special damages caused by the fraud and unrecoverable as contract damages. *TN Metro Holdings I, LLC v. Commonwealth Ins. Co.*, No. 11-CV-06063, 2014 U.S. Dist. LEXIS 145943, at *11-12 (S.D.N.Y. Sept. 30, 2014) (quoting *Bridgestone/Firestone*, 98 F.3d at 20).

## ARGUMENT

### I. CREDIT FUND MUST BE JOINED AS A REQUIRED PARTY UNDER RULE 19

Credit Fund is the sole Lender under the LSA and a direct signatory to the LSA, the Forbearance Agreement, and the Notice of Default. Ex. A, Schedule 1; Ex. K; Ex. M. "It is well established that a party to a contract that is the subject of the litigation is considered a necessary party," *Chalfin v. Go Big Solar, LLC*, No. 24 Civ. 4768, 2025 U.S. Dist. LEXIS 136996, at *30 (S.D.N.Y. July 17, 2025). All three situations described in Rule 19(a)(1) are present here: complete relief cannot be accorded without Credit Fund, this action will determine and impair

Credit Fund's contractual rights, and Credit Fund's absence exposes Defendants to a substantial risk of inconsistent obligations.

### A. In Credit Fund's Absence, the Court Cannot Accord Complete Relief Among the Existing Parties

Rule 19(a)(1)(A) requires joinder of a party in whose "absence the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). A court cannot accord complete relief when the party holding the actual economic stake in the judgment is absent.

*Global Discount Travel Services, LLC v. TWA,* 960 F. Supp. 701 (S.D.N.Y. 1997), is directly on point. There, the court held that a direct party to the contract in dispute is a party in "whose absence complete relief cannot be accorded among those already parties." *Id.* at 707-08 (quoting Fed. R. Civ. P. 19(a)(1)). As the court explained, the complete relief clause was designed to "stress[] the desirability of joining those persons in whose absence the court would be obliged to grant partial or 'hollow' rather than complete relief to the parties before the court," as well as "avoid[] repeated lawsuits on the same essential subject matter." *Id.* (quoting Fed. R. Civ. P. 19(a) advisory committee's note). Indeed, "a contracting party is the paradigm of an indispensable party." *Id. at* 708–09 (citations omitted).

That reasoning controls here. The relief Plaintiffs seek does not run to A.R.I. Agent in its own right; it runs to A.R.I. Agent "for the ratable benefit of Lenders"—that is, for Credit Fund. Ex. A §§ 2.1, 4.1, 9.4. A.R.I. Agent holds bare legal title to the Collateral, while Credit Fund holds the entire beneficial interest in every dollar recovered. Relief entered without the beneficial owner is precisely the "partial or 'hollow'" relief that Rule 19(a)(1)(A) is designed to prevent, and joining Credit Fund—a step that is feasible and diversity-neutral—resolves the entire controversy in a single proceeding. *Global Discount Travel*, 960 F. Supp. at 708.

B. Litigating this Action Would Determine Credit Fund's Rights Under the Relevant Contract

Additionally, Credit Fund is a required party because this action would adjudicate its rights under the contracts it signed. "The key issue in deciding whether either part of Rule 19(a) applies is the extent to which this case requires a determination of rights and interests under [the contract], to which [the absent entity] is a party." *Baldwin v. Interscope Records, Inc.*, No. 19-cv-8923, 2021 U.S. Dist. LEXIS 41733, at *12–13 (S.D.N.Y. Mar. 4, 2021).

In Count I (Breach of Contract), Plaintiffs allege that Mr. Merriman and the Trust breached the Guaranties which guarantee the Obligations arising under the LSA. SAC ¶¶ 237-246. Any adjudication of that claim would necessarily determine Credit Fund's rights including: (1) the validity, enforceability, and interpretation of the LSA and the Guaranties; (2) whether Events of Default occurred; and (3) the amount of the Obligations owed for the Lenders' ratable benefit. Credit Fund's rights would therefore be decided in a proceeding to which it is not a party. *See e.g., Delcon Constr. Corp. v. United States HUD*, 205 F.R.D. 145, 147–48 (S.D.N.Y. 2002) (ordering joinder where the absent party was party to the underlying contract, and resolution of the claims would require the court to determine rights and obligations under the contract); *Seagrape Invs. LLC v. Kaleil Isaza Tuzman*, No. 21-cv-7517, 2025 U.S. Dist. LEXIS 180467, at *12–13 (S.D.N.Y. Sept. 15, 2025) ("[i]f the resolution of a plaintiff's claim would require the definition of a non-party's rights under a contract, it is likely that the non-party is necessary under Rule 19(a).")

*Baldwin v. Interscope Records, Inc.*, 2021 U.S. Dist. LEXIS 41733 is on point. In *Baldwin*, the defendant argued that an absent party—also a party to the relevant agreements—was necessary because resolution of the plaintiff's claims required "a determination of the validity" of the agreements, "the parties' respective performance and obligations thereunder, and whether a breach

or termination of that agreement occurred." The court agreed and concluded that the absent party had an interest in the action and that the plaintiff's suit required "an analysis of the respective rights and obligations" of the plaintiff and the absent party under the agreements, as well as the continuing validity of the agreements. This case demands the same result. To decide A.R.I. Agent's breach claim, the Court must determine whether the LSA and the Guaranties are valid, whether the parties performed, and whether a breach occurred—and Credit Fund is a party to those agreements.

C. Plaintiffs' Claims for Equitable Relief Independently Require Credit Fund's Presence

Rule 19's concerns are particularly acute where a plaintiff seeks equitable relief. *See Kermanshah v. Kermanshah*, No. 08-CV-409, 2010 U.S. Dist. LEXIS 45896, at *8 (S.D.N.Y. May 11, 2010). Plaintiffs seek equitable relief in four counts: In Count IX ("Declaratory Judgment – Governance Authority"), A.R.I. Agent seeks declarations regarding its exercise of rights under the LSA and Guaranties, including the Proxy Rights and the Warrant. SAC ¶¶ 302–310. In Count X ("Declaratory Judgment – Intellectual Property"), Plaintiffs seek declarations regarding Defendants' Intellectual Property, including that A.R.I. Agent holds a valid, perfected, first priority security interest in it. SAC ¶¶ 311–317. In Count XI ("Constructive Trust – Intellectual Property"), Plaintiffs seek a constructive trust over the proceeds of the Intellectual Property, and in Count XII ("Accounting"), an accounting of those same proceeds. SAC ¶¶ 318–325; *see Murphy v. Virda Netco Establishment*, No. 19 Civ. 5198, 2020 U.S. Dist. LEXIS 37818, at *6 (S.D.N.Y. Mar. 3, 2020) (claims for an accounting and constructive trust are equitable in nature.).

Each of these counts would fix rights in Collateral pledged "to Agent, for itself and the ratable benefit of Lenders"—declaring the Lien valid and first in priority, and impressing a trust on and compelling an accounting of revenues allegedly derived from that Collateral. Ex. A § 4.1;

SAC ¶¶ 317(ii), 319, 325, 330. Count IX seeks a declaration that A.R.I. Agent validly exercised its rights under the LSA and the Guaranties upon the occurrence of Events of Default—rights the Guaranties confer on the Agent "for the ratable benefit of itself and the Lenders." Exs. C, D, H §§ 4.1; SAC ¶¶ 118, 304-05, 310(i). Yet Defendants could still face Credit Fund's demand in a separate litigation, potentially resulting in precisely the "double, multiple, or otherwise inconsistent obligations" Rule 19(a)(1)(B)(ii) is meant to prevent.

D. <u>A.R.I. Agent's Authority Does Not Extend to Credit Fund's Potential Tort Claims</u>

Credit Fund's presence is independently required because A.R.I. Agent's authority as agent does not reach the common-law tort claims Credit Fund may hold in its own right. Plaintiffs characterize the Loan Documents as creating a "single set of rights" that A.R.I. Agent alone may pursue, but that characterization ignores Credit Fund's distinct beneficial interest. The recurring phrase "for the ratable benefit of Lenders" confirms that A.R.I. Agent holds bare legal title while Credit Fund, as the sole Lender, holds the entire beneficial interest in every dollar recovered. Ex. A §§ 2.1, 4.1, 9.4. The agent and the beneficial owner are not the same, and their rights can diverge—most sharply as to claims that fall outside the agency mandate.

A.R.I. Agent's appointment is cabined to contractual rights. Section 12.18(a) of the LSA appoints A.R.I. Agent "to act on behalf of Lenders as administrative agent and collateral agent *under this Agreement and the other Loan Documents*, and to hold and enforce any and all Liens on Collateral." Ex. A § 12.18(a) (emphasis added). By its terms, that authority extends only to rights arising "under [the LSA] and the other Loan Documents." *Id.* Nothing in Section 12.18(a)—or anywhere else in the LSA—authorizes A.R.I. Agent to assert, compromise, release, or litigate common-law tort claims on Credit Fund's behalf. Section 12.18(a)'s limitation to rights arising "under [the LSA] and the other Loan Documents" must be given effect.

Taking Plaintiffs' own allegations as true, as the Court must at this stage, Credit Fund may hold fraud claims that no party to this action is authorized to assert. Section 12.18(f) of the LSA provides that "[e]ach Lender acknowledges that it has, independently and without reliance upon Agent or any other Lender, made its own credit and financial analysis of the Loan Parties and its own decision to enter into this Agreement." Ex. A § 12.18(f). Credit Fund is the sole Lender and committed every dollar of the loan. If Plaintiffs' allegations that Merriman obtained financing through misrepresentation are credited, then Credit Fund's own independent lending decision was allegedly corrupted by that fraud, giving rise to tort claims arising from its own reliance—claims A.R.I. Agent has no authority to assert under Section 12.18(a).

That risk is concrete, not hypothetical, because of the Ellison dual-role problem. Zack Ellison simultaneously serves as managing member of A.R.I. Agent and as sole general partner of Credit Fund, and he signed the LSA in both capacities on the same signature page. Ex. A at 35. Plaintiffs' attempt to attribute the diligence and reliance underlying their fraud allegations exclusively to A.R.I. Agent is a pleading choice, not factual reality: Ellison's knowledge cannot be compartmentalized between his two roles, and when the SAC alleges that "A.R.I." relied on Merriman's misrepresentations, it necessarily implicates Ellison's decision-making for Credit Fund as well. Because A.R.I. Agent cannot assert, and Plaintiffs have not asserted, the fraud claims that Credit Fund may hold through Ellison, those claims can be adjudicated in this action only if Credit Fund is joined—precisely the situation Rule 19 is designed to prevent.

E. <u>Joinder Is Feasible and Will Not Defeat Diversity</u>

Finally, joinder is feasible because adding Credit Fund will not disturb this Court's diversity jurisdiction. Diversity jurisdiction requires that all of the adverse parties in a lawsuit be completely diverse with regard to citizenship. *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 930 (2d Cir. 1998). And the citizenship of a limited partnership is determined

by the citizenship of its partners. *Fund L.P. v. Alethea Tech. PTE Ltd.*, No. 25 Civ. 2066, 2025 U.S. Dist. LEXIS 220402, at *4 (S.D.N.Y. Nov. 7, 2025). Credit Fund has already represented the very citizenship-related facts which establish that its presence poses no jurisdictional obstacle here. In removing a related state court action to federal court on diversity grounds, A.R.I. Agent and Credit Fund—as co-defendants—represented that Credit Fund is a limited partnership, that its sole general partner is Zachary Ellison, that he is a citizen of Florida, and that none of Credit Fund's other limited partners is a citizen of Nevada. *Merriman v. A.R.I. Agent, LLC,* No. 2:26-cv-00171 (D. Nev. Jan. 26, 2026), ECF No. 1 (Notice of Removal) ¶¶ 9–11. Thus, adding Credit Fund as a plaintiff therefore leaves complete diversity intact.

## II. A.R.I. AGENT'S FRAUD CLAIM REMAINS DUPLICATIVE OF ITS CONTRACT CLAIM AND THEREFORE MUST BE DISMISSED

The three-exception framework, or the *Bridgestone* factors, govern this motion exactly as it governed the last. A fraud claim pleaded alongside a contract claim survives only if the plaintiff pleads a separate legal duty, a collateral or extraneous misrepresentation, or special fraud damages. *Bridgestone/Firestone*, 98 F.3d at 19-20.

As an initial matter, Plaintiffs' addition of the words "Fraudulent Inducement" to Count III changes nothing. A fraudulent inducement claim premised on representations that are embodied in the parties' contract is subject to the same three-exception test as any other fraud claim brought alongside a contract claim. *See Bridgestone/Firestone*, 98 F.3d at 19-20; *Kriegel v. Donelli*, No. 11 Civ. 9160, 2014 U.S. Dist. LEXIS 90086, at *40-43 (S.D.N.Y. June 30, 2014) (dismissing fraudulent-inducement claim premised on warranties set forth in the relevant agreement).

And, ultimately, Count III satisfies none of these factors. Plaintiffs' amendments add labels, a theory of "independence," and a repackaged damages list, but the operative facts—

realleged wholesale from paragraphs 1 through 236, *see* SAC ¶ 252—are the same facts that constitute A.R.I.'s breach-of-contract claim. Accordingly, the fraud claim is duplicative.

A. Plaintiffs Identify No Legal Duty Independent of the Contract

To escape the first *Bridgestone* exception, Plaintiffs added a new paragraph asserting four purported "independent" sources of a duty to disclose—superior knowledge and special facts, partial disclosure, affirmative acts of concealment, and a general duty—and expressly disclaimed any reliance on the contracts' reporting and disclosure covenants. SAC ¶ 256. They also deleted the Amended Complaint's concession that those duties arose "pursuant to the reporting and disclosure requirements under the Loan Agreement and the Guaranties." Am. Compl. ¶ 244. But a plaintiff cannot manufacture an extracontractual duty by deleting a concession and reciting new labels while realleging the same facts. The duty to disclose that will support a fraud claim must exist *separately* from the duty to perform under the contract. *See Bridgestone/Firestone*, 98 F.3d at 19–20. Plaintiffs' four theories fail that test.

To begin, Plaintiffs plead no plausible superior knowledge or special facts duty. Such a duty only "arises where one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair." *Imperatore v. Putnam Lovell NBF Sec. Inc.*, No. 05 CV 4966, 2006 U.S. Dist. LEXIS 10598, at *10 (S.D.N.Y. Mar. 15, 2006). Additionally, "[i]n business negotiations, an affirmative duty to disclose may arise where (1) one party has superior knowledge of certain information, (2) that information is not readily available to the other party, and (3) the first party knows that the second party is acting on the basis of mistaken knowledge." *See id.* at *10-11. Here, Plaintiffs have either not shown how any "concealed facts" made the transactions at issue inherently unfair or that there were any "concealed facts." SAC ¶ 256(a). In fact, Plaintiffs' own recounting as to the circumstances surrounding the disclosure of the Mamdani Note suggests that Zack Ellison, the sole member of A.R.I., did know about the note. *See* SAC ¶ 255(iii)

(Merriman allegedly asked Ellison, "Zack are you saying you didn't know anything about this loan?"). The Trident Loan, meanwhile, was incurred in early November 2025, a period during which A.R.I. was knowledgeable of the Company's finances and receiving bank records. Plaintiffs even admit that, in November 2025, "A.R.I. discovered that . . . the Company's operating account would have been negative if not for the additional capital provided by A.R.I. and the Trident Loan." *See* SAC ¶ 174. Further, publicly available information, like the Fattorini Judgment, cannot support the doctrine. *See Congress Fin. Corp. v. John Morrell & Co.*, 790 F. Supp. 459, 471–74 (S.D.N.Y. 1992) (no duty to disclose where "the information that plaintiffs now claim was concealed from them was [] a matter of public record").

Plaintiffs' partial-disclosure theory also fails. Plaintiffs allege that Mr. Merriman "elected to speak" about the Company's finances and the Intellectual Property. But they never identify a "partial or ambiguous statement, whose full meaning would only be made clear after complete disclosure." *First Hill Partners, LLC v. Bluecrest Cap. Mgmt. Ltd.*, 52 F. Supp. 3d 625, 638–39 (S.D.N.Y. 2014).

Plaintiffs' final two theories as to independent duties, "affirmative acts of concealment" and "Defendants' general duty," are not recognized sources of independent duties of disclosure. *See* SAC ¶ 256(c)-(d). Affirmative concealment is an element of fraudulent concealment. *See Phhhoto Inc. v. Meta Platforms, Inc.*, 123 F.4th 592, 604-05 (2d Cir. 2024). Similarly, the asserted "general duty" not to knowingly make false statements merely restates an element when proving fraud. Each of Plaintiffs' theories therefore fails and Count III cannot satisfy the first *Bridgestone* exception.

B. The Alleged Misrepresentations Are Not Collateral or Extraneous—They Track the Contract's Representations and Warranties

The second *Bridgestone* factor requires a misrepresentation "collateral or extraneous" to the contract. *Bridgestone/Firestone*, 98 F.3d at 19-20. Count III describes none. Every misrepresentation and omission itemized in SAC ¶ 255 maps directly onto a representation, warranty, or covenant in the LSA or the Loan Documents, as the following comparison shows,[6] despite Plaintiffs' argument disclaiming that fact. *See* SAC ¶ 254(ii).

| **Alleged Misrepresentation or Omission (SAC ¶ 255)** | **Corresponding Loan Document Provision** |
|---|---|
| (i) Pre-closing diligence misrepresentations (Feb.–May 2024) regarding existing indebtedness, encumbrances on the Intellectual Property, and ownership of the Intellectual Property | LSA §§ 5.2(a), 5.5, 5.13, 7.4–7.5 (good title; no undisclosed liabilities; full disclosure; indebtedness and encumbrances) |
| (ii) The October 2024 diligence demands and the October 2024 Certificate (affiliated entities, financial condition, and existing indebtedness) | LSA §§ 5.5, 5.13, 6.2 (financial condition; full disclosure; financial reporting and certificates) |
| (iii) Concealment of the Mamdani Note—a pre-existing secured personal liability encumbering substantially the same Collateral | LSA §§ 5.2(a), 5.5, 7.4, 7.5 (good title free of non-permitted Liens; no undisclosed liabilities; indebtedness; encumbrances) |
| (iv) Misrepresentations that the Collateral and Intellectual Property were unencumbered and owned by Lights Out Holdings (WY) | LSA §§ 4.1, 4.2, 5.2(a), 7.5 (priority of security interest; good title; encumbrances) |
| (v) The Joinder "bring-down" representation reaffirming the LSA's representations and warranties as true as of December 31, 2024 | Joinder (Ex. B); LSA Art. 5 (§§ 5.2(a), 5.5, 5.13) (good title, financial reporting, full disclosure) |
| (vi) The Perfection Certificate's certification that Lights Out Holdings (WY) owned the Intellectual Property | Perfection Certificate (Ex. E); IP Security Agreement (Ex. F); LSA § 5.2(a) (good title) |

---

[6] Defendants do not address the accuracy or validity of the assertions reflected in the chart as part of this Motion, nor do Defendants waive their right to challenge their accuracy or validity at a later juncture.

| **Alleged Misrepresentation or Omission (SAC ¶ 255)** | **Corresponding Loan Document Provision** |
|---|---|
| (vii) Concealment of the Trident Loan—additional secured indebtedness encumbering overlapping Collateral | LSA §§ 7.4, 7.5 (indebtedness and encumbrances); Fifth Amendment and Forbearance Agreement (Ex. K) |
| (viii) Concealment of the Fattorini Judgment, bearing on Mr. Merriman's financial condition and capacity as guarantor | LSA §§ 5.1(f), 5.13 (omission of material facts and full disclosure) |
| (ix) Concealment of Lights Out Enterprises' true financial condition (accounts payable, liquidity, revenue decline, and unpaid tax liabilities) | LSA §§ 5.5, 5.13, 6.2 (financial statements fairly presented; full disclosure; financial reporting) |
| (x) Diversion of Loan proceeds to service the Mamdani Note and other non-permitted obligations | LSA §§ 2.2(e), 7.4, 7.5 (permitted-use-of-proceeds; indebtedness and encumbrances) |
| (xi) The Trust—Mr. Merriman's execution of the Trust Guaranty as trustee, charging the Trust with his knowledge | Trust Guaranty (Exs. C and D) (Guaranties § 5.1) (liens and encumbrances) |

Plaintiffs' arguments as to the timing of these misrepresentations and their effect are irrelevant. *See* SAC ¶ 254(ii). Because each alleged misstatement deals solely with the parties' bargained-for performance—title, priority, permitted debt, use of proceeds, and financial reporting—none is extraneous to the contract. Courts in this District routinely dismiss fraud claims on precisely this ground. *See Ritchie Capital Mgmt., L.L.C. v. Coventry First LLC*, No. 07 Civ. 3494, 2007 U.S. Dist. LEXIS 51081, at *19 (S.D.N.Y. Jul. 17, 2007) ("[T]o the extent the fraud claim rests on misrepresentations or omissions concerning representations and warranties contained in the agreements, then these duplicate the breach of contract claim and are barred for that reason."); *Student Advantage Fund I LLC v. Kennedy Lewis Mgmt. LP*, No. 19-cv-2401, 2019 U.S. Dist. LEXIS 199892, at *6–9 (S.D.N.Y. Nov. 18, 2019) (fraud claim duplicative, including because plaintiff did not identify a fraudulent misrepresentation extraneous to the parties' agreement).

C. Plaintiffs Still Fail to Plead Fraud-Only "Special Damages"

The third *Bridgestone* factor requires special damages caused by the fraud that are not recoverable as contract damages. Plaintiffs' repackaged list of "out-of-pocket losses" (SAC ¶ 263(a)–(h)) does not supply them. Each item is either the same recovery A.R.I. seeks in Count I, a loss not proximately caused by any misrepresentation, or a benefit-of-the-bargain measure that is not cognizable as fraud damages under New York law.

The centerpiece—more than $530,000 in "new cash equity capital" paid in exercising the Warrant on January 2 and January 5, 2026 (SAC ¶ 263(a))—was a voluntary, post-default investment A.R.I. elected to make *after* it had already accelerated the debt and moved to assume control of the Company. *See* SAC ¶¶ 164–169. A "discretion[ary]" payment, *see* SAC ¶ 27, made to exercise an equity right after default is not a loss caused by any inducement to lend, and it is far too attenuated from the alleged misrepresentations to be proximately caused by them. *See Kregos v. AP*, 3 F.3d 656, 665 (2d Cir. 1993) (fraud "losses must be the direct, immediate, and proximate result of the misrepresentation.") That the payment "was not a Loan" and did not increase the Obligations, *see* SAC ¶ 263(a) confirms the point: it was a separate, voluntary equity exercise, not a fraud-caused loss.

Plaintiffs also allege that A.R.I. was to fund or address the Company's past-due tax obligations of approximately $123,753.96 (within a total balance of $171,733.75), as well as approximately $500,000 in aged accounts payable to critical vendors that accumulated during Mr. Merriman's management. *See* SAC ¶ 263(b)-(c). Neither is a special damage caused by fraud. These are liabilities of the Company, not out-of-pocket losses of A.R.I. Agent. A.R.I. came to bear them only derivatively, as a consequence of its decision to exercise the Warrant and acquire the Company's equity. These items thus fail the special-damages exception.

Plaintiffs also cite as special damages expenses related to investigations, enforcement, and professional-fee items. SAC ¶ 263(d), (g), and (h). These costs are, by Plaintiffs' own pleading, recoverable as "Lender Expenses" under the Loan Agreement and the Guaranties. *See* SAC ¶¶ 85, 243. Losses that the contract itself makes recoverable are, by definition, not special damages unrecoverable in contract.

Finally, Plaintiffs' damages as to the "diminution in the realizable value of the security" and the "loss A.R.I. sustained by forbearing rather than enforcing," *see* SAC ¶ 263(e)–(f), are benefit-of-the-bargain measures—the difference between the collateral position A.R.I. was promised and the position it received, and the difference between what enforcement would have yielded earlier versus later. Those are contract measures recoverable, if at all, under the Loan Documents; they are not the out-of-pocket losses to which New York limits fraud damages. *See Ostano Commerzanstalt v. Telewide Sys., Inc.*, 794 F.2d 763, 766 (2d Cir. 1986) ("[T]he law of New York is plain that out-of-pocket rather than benefit-of-the-bargain damages are awarded for fraud so that 'all elements of profit are excluded'"); *Pasternak v. Dow Kim*, 961 F. Supp. 2d 593, 597 (S.D.N.Y. Aug. 9, 2013) ("A plaintiff may only recover 'what [he] lost because of the fraud, not . . . what [he] might have gained.)'"

Plaintiffs' attempt to plead these damages "in the alternative" under Rule 8(d)(2), *see* SAC ¶ 263(i), does not rescue this claim. Rule 8(d)(2) permits a plaintiff to plead inconsistent theories; it does not permit a plaintiff to relabel contract damages as fraud damages to escape the duplicativeness rule. The "fraud claim must stand on its own." *Maricultura Del Norte, S. DE R.L. DE C.V. v. Worldbusiness Capital, Inc.*, 159 F. Supp. 3d 368, 377-78 (S.D.N.Y. Nov. 24, 2015) And, here, it does not.

Finally, Plaintiffs' request for punitive damages does not create special damages. *See* SAC ¶ 264. *See Nat'l Union Fire Ins. Co. v. Monarch Payroll, Inc.*, No. 15-cv-3642, 2016 U.S. Dist. LEXIS 19077, at *17 (S.D.N.Y. Feb. 17, 2016) (inclusion of prayer for punitive damages not sufficient basis to allow a fraud claim that is based on the breach of a contract). Because Count III satisfies none of the three *Bridgestone/Firestone* exceptions, it is duplicative of A.R.I.'s breach-of-contract claim and must be dismissed.[7]

D. <u>In the Alternative, Count III Must Be Dismissed Because A.R.I. Agent Lacks Authority to Assert a Fraud Claim That Belongs to Credit Fund</u>

Even if Count III were not duplicative of Count I, it fails for an independent reason: Plaintiffs lack authority to assert it. A.R.I. Agent signed the Loan Documents solely as administrative and collateral agent, and Section 12.18(a) of the LSA cabins that authority to acting "under this Agreement and the other Loan Documents." Ex. A § 12.18(a). Nothing in the Loan Documents authorizes A.R.I. Agent to assert, in its own name, the common-law fraud claims that belong to Credit Fund as the sole Lender. *See W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 108–09 (2d Cir. 2008) (holding that an agent without "legal title to, or a proprietary interest in," its principal's claims lacks standing to assert them).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court order Credit Fund joined as a party and dismiss Count III of the Second Amended Complaint with prejudice.

---

[7] Even setting aside duplicativeness, Count III presents a fundamental pleading problem: A.R.I. Agent alleges that "A.R.I. reasonably and justifiably relied" on Mr. Merriman's misrepresentations, *see* SAC ¶ 259, yet the LSA provides that "Each *Lender* acknowledges that it has, independently and *without reliance upon Agent or any other Lender*, made *its own* credit and financial analysis of the Loan Parties and *its own* decision to enter into this Agreement" (Ex. A § 12.18(f)) (emphasis added). As discussed above, Credit Fund is the sole Lender under the LSA. Therefore, Defendants reserve the right to challenge whether A.R.I. Agent can satisfy the reliance element of a fraud claim in subsequent proceedings should Count III survive this Motion.

Dated: October 9, 2026
New York, NY

Respectfully submitted,

*/s/ Amanda S. Coleman*
Amanda S. Coleman
FOLEY HOAG LLP
1301 Avenue of the Americas
New York, NY 10019
(212) 812-0400
acoleman@foleyhoag.com

Alain P. Mathieu (*pro hac vice*)
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000
amathieu@foleyhoag.com

*Counsel for Shawne Merriman individually, and as Trustee of Trust M250124 and Lights Out Holdings LLC, a California limited liability company*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the preceding brief complies with the word-count limitations set forth in Local Rule 7.1(c) because it contains 7,931 words, excluding the parts of the document exempted by Local Rule 7.1(c).

Date: October 9, 2026

*/s/ Amanda S. Coleman*
Amanda S. Coleman