**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

A.R.I. AGENT, LLC, et al.,

Plaintiffs,

v.

SHAWNE MERRIMAN, et al.

Defendants.

Civil Action No. 26-cv-03778-JAV

ORAL ARGUMENT REQUESTED

# REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO JOIN A.R.I. SENIOR SECURED GROWTH CREDIT FUND, LP UNDER RULE 19, AND TO DISMISS COUNT III OF THE SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....1

LEGAL STANDARD ....1

ARGUMENT....2

I. CREDIT FUND IS A REQUIRED PARTY UNDER RULE 19.... 2

A. Complete Relief Cannot Be Accorded Among the Existing Parties.... 2

B. Credit Fund's Failure to "Claim an Interest" Is Immaterial .... 3

C. The "Single Set of Rights" Theory Fails .... 3

D. The No-Action Clause Does Not Eliminate the Risk of Inconsistent Obligations.... 4

E. A.R.I.'s Authority Does Not Reach Credit Fund's Tort Claims.... 5

F. Defendants' Authorities Control.... 7

II. COUNT III REMAINS DUPLICATIVE AND MUST BE DISMISSED.... 7

A. Count III Restates the Contract Claim Against Merriman and the Trust .... 7

B. Pre-Closing Statements are Not Misstatements of Present Fact but Contractual Promises Regarding Prospective Performance.... 10

C. Plaintiffs' Partial-Disclosure and Superior Knowledge Duty Theories Still Fail.... 10

D. A.R.I.'s Exercise of the Warrant Cannot Qualify as Fraud-Caused Special Damages 11

E. A.R.I. Lacks Standing to Assert Credit Fund's Fraud Claim .... 12

CONCLUSION....12

# TABLE OF AUTHORITIES

**Cases**

*Baring Indus., Inc. v. Rosen*,
No. 24-cv-5606, 2025 U.S. Dist. LEXIS 14247 (S.D.N.Y. Jan. 27, 2025) ..............................4

*Bridgestone/Firestone v. Recovery Credit Servs.*,
98 F.3d 13 (2d Cir. 1996)..........................................................................................2

*Chase Manhattan Bank v. Motorola, Inc.*,
136 F. Supp. 2d 265 (S.D.N.Y. 2001)...................................................................3, 4

*Crouse-Hinds Co. v. InterNorth, Inc.*,
634 F.2d 690 (2d Cir. 1980).........................................................................................1

*Delcon Constr. Corp. v. United States HUD*,
205 F.R.D. 145 (S.D.N.Y. 2002) ..................................................................................7

*Fagioli S.p.A. v. GE*,
No. 14-CV-7055, 2014 U.S. Dist. LEXIS 184076 (S.D.N.Y. Nov. 25, 2014)..........................3

*First Hill Partners, LLC v. Bluecrest Capital Mgmt.*,
52 F. Supp. 3d 625 (S.D.N.Y. 2014).........................................................................10

*Global Discount Travel Services, LLC v. TWA*,
960 F. Supp. 701 (S.D.N.Y. 1997) ...............................................................................2

*Kersh Lake Drainage District v. Johnson*,
309 U.S. 485 (1940)......................................................................................................3

*Kregos v. AP*,
3 F.3d 656 (2d Cir. 1993).........................................................................................11

*Mastercard Int'l, Inc. v. Visa Int'l Serv. Ass'n*,
471 F.3d 377 (2d Cir. 2006)....................................................................................1, 3

*Navarro Savings Ass'n v. Lee*,
446 U.S. 458 (1980)...................................................................................................3, 4

*Ostano Commerzanstalt v. Telewide Systems, Inc.*,
794 F.2d 763 (2d Cir. 1986)........................................................................................11

*Pludeman v. Northern Leasing Sys., Inc.*,
10 N.Y.3d 486 (2008) ......................................................................................................9

*Polonetsky v. Better Homes Depot, Inc.*,
97 N.Y.2d 46 (2001) ......................................................................................................9

*PricewaterhouseCoopers LLP v. Giddens (In re MF Global Inc.)*,
496 B.R. 315 (S.D.N.Y. 2013)....................5

*Ratermann v. Pierre Fabre USA, Inc.*,
651 F. Supp. 3d 657 (S.D.N.Y. Jan. 17, 2023) ....................2

*Seagrape Invs. LLC v. Kaleil Isaza Tuzman*,
No. 21-cv-7517, 2025 U.S. Dist. LEXIS 180467 (S.D.N.Y. Sept. 15, 2025) ....................7

*Thompson v. County of Franklin*,
15 F.3d 245 (2d Cir. 1994)....................3

*TN Metro Holdings I, LLC v. Commonwealth Ins. Co.*,
51 F. Supp. 3d 405 (S.D.N.Y. Sept. 30, 2014) ....................2

*Transcontinental Oil Corp. v. Trenton Products Co.*,
560 F.2d 94 (2d Cir. 1977)....................3, 4

*U.S. Tsubaki Holdings, Inc. v. Estes*,
194 A.D.3d 590 (1st Dep't 2021) ....................9

*Wyle Inc. v. ITT Corp.*,
130 A.D.3d 438 (1st Dep't 2015) ....................10

**Other Authorities**

Rule 17(a)(1)(F) ....................3

Rule 19(a)(1)(A) ....................2, 3

Rule 19(a)(1)(B)....................3

## PRELIMINARY STATEMENT

Plaintiffs' Opposition confirms the facts that require joinder and largely concedes what dooms Count III of the Second Amended Complaint (the "SAC"). Plaintiffs do not dispute that Credit Fund is the sole Lender, that it funded every dollar, or that every recovery is applied "for the ratable benefit of Lenders." Ex. A to Ellison Decl. §§ 2.1, 4.1, 9.4.[1] Most tellingly, Plaintiffs posit that "[w]hether any distinct claim belonging independently to Credit Fund would be affected is a separate question not necessary to resolve here." Opp. at 7. However, that is the very question Defendants' motion raises.

As to Plaintiffs' fraud claim, Plaintiffs defend only the Warrant payment as special damages and tell the Court that it "need not address" their other supposed losses. Opp. at 16. Plaintiffs also abandon two "independent duty" theories pled in the SAC. Finally, every category of alleged misstatement on which Count III rests is the subject of an express warranty in the Loan Documents and Guaranties. Plaintiffs' fraud claim is therefore duplicative of their breach of contract claim. Credit Fund should be joined, and Count III dismissed with prejudice.

## LEGAL STANDARD

While it is not "enough for a third party [Credit Fund] to be adversely affected by the outcome of the litigation," *see* Opp. at 3, that rule applies when the third-party is a stranger to the contract at issue. *Mastercard Int'l, Inc. v. Visa Int'l Serv. Ass'n*, 471 F.3d 377, 387 (2d Cir. 2006). Where the contract involving the absent third party is the basis of the claim, the third party may be joined as a necessary party. *Id.* at 386 (citing *Crouse-Hinds Co. v. InterNorth, Inc.*, 634 F.2d 690 (2d Cir. 1980)).

---

[1] All exhibits cited herein refer to exhibits to the Declaration of Zack Ellison in Support of Plaintiffs' Motion for Temporary Restraining Order and Order to Show Cause for a Preliminary Injunction. ECF No. 7.

To survive a Rule 12(b)(6) motion as to Count III of the SAC, Plaintiffs must plead a separate legal duty, a collateral or extraneous misrepresentation, or special fraud damages. *TN Metro Holdings I, LLC v. Commonwealth Ins. Co.*, 51 F. Supp. 3d 405, at *410-411 (S.D.N.Y. Sept. 30, 2014) (quoting *Bridgestone/Firestone v. Recovery Credit Servs.*, 98 F.3d 13, at 20 (1996)). While Plaintiffs need only satisfy one of the *Bridgestone* exceptions, Plaintiffs must do so substantively, rather than with conclusory statements or legally insufficient claims. *See Ratermann v. Pierre Fabre USA, Inc.*, 651 F. Supp. 3d 657, 676 (S.D.N.Y. Jan. 17, 2023) (dismissing plaintiff's fraud claim because plaintiff "assert[ed] in conclusory fashion that the alleged fraud caused 'special damages' . . . which plainly does not suffice.")

## <u>ARGUMENT</u>

### I. CREDIT FUND IS A REQUIRED PARTY UNDER RULE 19

#### A. Complete Relief Cannot Be Accorded Among the Existing Parties

Plaintiffs argue that payment to A.R.I. would discharge the Obligations and that A.R.I. holds the Liens, Proxy Rights, and Warrant. Opp. at 2, 4. That illustrates Defendants' point: A.R.I. holds bare legal title, while Credit Fund holds the entire beneficial interest. *See* Ex. A §§ 2.1, 4.1, 9.4; Exs. C, D, H § 4.1. It is precisely *because* Credit Fund is not a party to the Guaranties—which were given "[t]o induce the Agent *and Lenders*" to lend, *see* Exs. C, D, H § 2.1—that a judgment without it would be the "partial or 'hollow'" relief Rule 19(a)(1)(A) aims to prevent. *Global Discount Travel Services, LLC v. TWA*, 960 F. Supp. 701, 707-08 (S.D.N.Y. 1997).

Plaintiffs also claim that their declaratory and equitable counts are "equally complete between the existing parties" because their requested relief would "bind Defendants fully." Opp.

at 4. To support this claim, Plaintiffs cite the no-action clause and preclusion. Opp. at 5, 8-9. As explained below, neither forecloses a second action.

Regarding privity, Plaintiffs claim that "Credit Fund ***would be*** bound by this Court's judgment under preclusion doctrines." Opp. at 5. But preclusion "often require[s] a detailed analysis of a developed record," and cannot be assumed. *See Thompson v. County of Franklin*, 15 F.3d 245, 253 (2d Cir. 1994).

**B. Credit Fund's Failure to "Claim an Interest" Is Immaterial**

While Credit Fund's failure to "claim[] an interest" may affect the Rule 19(a)(1)(B) analysis, *see* Opp. at 5-6, Rule 19(a)(1)(A) contains no "interest" requirement, and federal courts may address joinder *sua sponte* where complete relief cannot be accorded. *See Mastercard*, 471 F.3d at 382-83 ("[B]oth trial courts and appellate courts may consider this issue sua sponte").

**C. The "Single Set of Rights" Theory Fails**

The recurring "ratable benefit" language in the Loan Documents confirms that Credit Fund holds a beneficial interest distinct from A.R.I.'s bare legal title. Plaintiffs' reliance on *Kersh Lake Drainage District v. Johnson*, 309 U.S. 485, 491 (1940) and Rule 17(a)(1)(F) is misguided, as neither authority helps Plaintiffs.

*Kersh Lake* does not address Rule 19. Rather, it is an 86-year-old preclusion case that merely held that absent bondholders were bound by an Arkansas chancery court decree.

Rule 17(a)(1)(F) is equally inapposite. Rule 17 asks *who may sue;* Rule 19 asks *who must be in the case.* And no court has held that Rule 17(a)(1)(F) displaces Rule 19. *See Fagioli S.p.A. v. GE*, 2014 U.S. Dist. LEXIS 184076, at *7-8 (S.D.N.Y. Nov. 25, 2014). Accordingly, Plaintiffs' citations to *Transcontinental Oil Corp. v. Trenton Products Co.*, 560 F.2d 94 (2d Cir. 1977); *Navarro Savings Ass'n v. Lee*, 446 U.S. 458 (1980), and *Chase Manhattan Bank v. Motorola, Inc.*,

136 F. Supp. 2d 265 (S.D.N.Y. 2001) are inapposite, as these cases address only diversity jurisdiction and fail to mention Rule 19. *See* Opp. at 7 n.4.

Finally, Plaintiffs contend that A.R.I. adequately represents Credit Fund's interests, rendering joinder unnecessary. Opp. at 8. But adequate representation is not a bar to joinder. Rather, it is one of several factors that courts can consider as to the third prong of Rule 19(a). *See Baring Indus., Inc. v. Rosen*, 2025 U.S. Dist. LEXIS 14247, at *4-5 (S.D.N.Y. Jan. 27, 2025). Regardless, close alignment between A.R.I. and Credit Fund makes joinder *easier* here; Credit Fund can be added to the case without introducing any new antagonism or complexity.

Moreover, even if A.R.I. and Credit Fund currently have aligned interests, those interests could diverge at any point—for example, if the two entities came under different control (*e.g.*, if Ellison ceased to manage one or both of them). The LSA expressly contemplates that the Agent can resign and be replaced by a successor Agent, and that Lenders' interests can be assigned. *See* Ex. A §§ 12.2(b), 12.18(h).

### D. The No-Action Clause Does Not Eliminate the Risk of Inconsistent Obligations

Plaintiffs argue that Section 12.18(n) of the LSA bars Credit Fund from bringing a separate suit. Opp. at 8-9. That argument fails for two reasons:

*First*, Section 12.18(n) does not prohibit Credit Fund from suing; it merely *conditions* suit on obtaining the Agent's prior written consent:

> [N]o Lender shall take any action to protect or enforce its rights arising out of this Agreement or any other Loan Document . . . ***without first obtaining the prior written consent of Agent***. (Emphasis added).

Ex. A § 12.18(n). Consent could easily be obtained, especially because A.R.I. and Credit Fund share the same principal—Zack Ellison.

*Second*—and critically—Section 12.18(n) expressly restricts enforcement actions to only those that "aris[e] out of this Agreement or any other Loan Document." Fraud claims arise from common-law duties of honest dealing—not from the LSA. *See also PricewaterhouseCoopers LLP v. Giddens (In re MF Global Inc.)*, 496 B.R. 315 (S.D.N.Y. 2013) ("In the Second Circuit, the 'arising under' contractual language at issue here has been narrowly construed to exclude tort claims").

Thus, if the fraud claim is independent of the contract, it is also independent of Section 12.18(n)'s restriction, which is limited to contract-based rights. Thus, Credit Fund would be free to bring a fraud action against Defendants without obtaining the Agent's consent.

Plaintiffs also contend that Defendants conflate "inconsistent obligations" with "inconsistent adjudications." Opp. at 9. They are wrong. Here, the risk falls squarely on the *obligations* side. Competing judgments about the validity of the Event of Default, the priority of the security interest, or the amount of the Obligations would impose directly conflicting demands on Defendants. And Credit Fund's potential fraud claim would add a separate category of liability across multiple proceedings.

**E. A.R.I.'s Authority Does Not Reach Credit Fund's Tort Claims**

Plaintiffs offer four rebuttals to Defendants' showing that A.R.I.'s authority does not extend to Credit Fund's potential tort claims. *See* Opp. at 10. None are meritorious.

*First*, Plaintiffs argue that Section 12.18 of the LSA is "solely for the benefit of [A.R.I.] Agent and Lenders" and confers no third-party-beneficiary rights on any Loan Party, so Defendants "cannot use Section 12.18 to rewrite the relationship between A.R.I. and Credit Fund." Opp. at 10. Defendants do not seek to rewrite anything. Defendants cite Section 12.18(a) as

evidence of the scope of the Agent's authority: an agent may act on behalf of a lender with contractual limits on its authority.

*Second*, Plaintiffs point to Section 9.6, which provides that "Agent has all rights and remedies provided under the Code, by law, or in equity." Opp. at 10. Section 9.6 addresses the *remedies* available to the Agent in enforcing the Loan Documents; it provides that the Agent or Lenders shall have the ability "to demand strict performance and compliance herewith." Ex. A § 9.6. This section does not, however, expand the Agent's *authority* to assert claims that do not arise out of the LSA and other Loan Documents.

*Third*, Plaintiffs argue that Section 12.18(f) "says nothing about [Credit Fund's] reliance on the Loan Parties or on Merriman." Opp. at 10. But Section 12.18(f) confirms that Credit Fund "made *its own* credit and financial analysis *of the Loan Parties* and its own decision to enter into this Agreement." Ex. A § 12.18(f) (emphasis added). If, as the SAC alleges, the Loan Parties' and Mr. Merriman's representations were false, it was Credit Fund's *independent* credit decision that was induced by them. Mot. at 16-17. Accordingly, crediting Plaintiffs' allegations, Credit Fund's independent lending decision was corrupted by fraud, giving rise to tort claims that A.R.I. has no authority to assert. Thus, because Count III states a fraud claim independent of the contract, that claim belongs to Credit Fund alone.

*Fourth*, Plaintiffs assert that the fraud is "A.R.I.'s own claim" because A.R.I. solicited and evaluated the representations, conducted the underwriting, and made the decisions to lend and forbear. Opp. at 10 (citing SAC ¶ 57). But A.R.I. did not lend anyone anything. Credit Fund did. *See* Ex. A §§ 2.2(a)(i), 12.18(f). Further, the SAC itself concedes that A.R.I. acted as agent "for certain lenders . . . that loaned nearly $1 million." SAC ¶ 2. The SAC's haphazard attribution of

the lending decision to A.R.I. is merely a pleading choice, which cannot override the plain meaning of the Loan Documents.

### F. Defendants' Authorities Control

Plaintiffs attempt to distinguish *Baldwin*, *Delcon*, and *Seagrape* as cases in which the absentee's "own performance or obligations under the contract were in dispute." Opp. at 11. In fact, in both *Delcon* and *Seagrape*, the court required the joinder of the absentee parties because they were a party to the underlying contract. *See Delcon Constr. Corp. v. United States HUD*, 205 F.R.D. 145, 147-48 (S.D.N.Y. 2002)*; Seagrape Invs. LLC v. Kaleil Isaza Tuzman*, 2025 U.S. Dist. LEXIS 180467, at *12-13 (S.D.N.Y. Sept. 15, 2025). The inquiry in each case is whether the suit requires construction of the absentee's rights—not merely whether its performance is disputed. Here, Count I requires the Court to determine whether Events of Default occurred and the amount of Obligations owed for the Lenders' ratable benefit. Mot. at 14.

Plaintiffs' answer to Defendants' authorities is that "Section 12.18 has already defined Credit Fund's rights, and no one disputes them." Opp. at 10-11. That is wrong. Section 12.18 allocates *authority* between the Agent and Lenders. Ex. A § 12.18(a), (n). It does not decide whether Events of Default occurred, the amount of the Obligations, or the validity and priority of the Lien—the questions that determine what Credit Fund will actually receive. Ex. A §§ 2.1, 4.1, 9.4. Nor does it address any claim Credit Fund holds outside the Loan Documents, a question Plaintiffs concede remains open. Opp. at 7.

## II. COUNT III REMAINS DUPLICATIVE AND MUST BE DISMISSED

### A. Count III Restates the Contract Claim Against Merriman and the Trust

Plaintiffs claim that Count III is asserted against Mr. Merriman and the Trust, whose "only agreements with A.R.I. are the Guaranties, in which they guaranteed 'the full and punctual

payment' of the Obligations," and that "Count I seeks only that payment." Opp. at 12. Plaintiffs add that "Defendants' chart does not tie any category of misrepresentation to a promise in the Guaranties, apart from the Trust's execution of its own." Opp. at 12. Plaintiffs fail to mention, however, that Count I seeks payment under the Guaranties of the very Obligations whose breach Count III restates as fraud. Each Guaranty incorporates by reference the LSA's general provisions, Exs. C, D, H § 3.7, and Mr. Merriman's Amended and Restated Personal Guaranty contains his own representations and warranties. Among them, Mr. Merriman personally warranted that "[n]either this Guarantee, any of the Loan Documents, nor any other document, certificate or statement furnished to Lender by or on behalf of the Borrower or the Guarantor contains or will contain any untrue statement of a material fact or omits or will omit to state a material fact necessary in order to make such representation, warranty or statement contained herein and therein not misleading or not incomplete," and that all such representations "shall survive until the Obligations are paid in full." Ex. H § 5.1(f).[2] Merriman warranted that there is no "action, suit, proceeding, inquiry or investigation . . . pending, or within the knowledge of the Guarantor threatened," that could materially and adversely affect his ability to perform. *Id.* § 5.1(c). He further warranted that his collateral was free of liens other than those scheduled. *Id.* § 5.1(a); *see also* Exs. C, D § 5.1. Finally, the Guaranty makes it an Event of Default if "any representation or warranty made by the Guarantor pursuant to or in connection with this Guarantee . . . shall prove to be false or misleading in any material respect when made." Ex. H § 5.5(d). As a result, every category of alleged misstatement or omission in SAC ¶ 255 is the subject of Mr. Merriman's own contractual warranty. Plaintiffs' own pleading agrees: the SAC alleges that Mr. Merriman's

---

[2] Plaintiffs rightfully note that Defendants mistakenly referred to this provision as LSA § 5.1(f) in their opening brief. Opp. at 14. The governing provision is Ex. H § 5.1(f).

concealment of the Company's tax liabilities—one of the alleged omissions underlying Count III (SAC ¶ 255(ix))—was "in breach of the Loan Agreement, the Joinder, and the Guaranties." SAC ¶ 188.

Plaintiffs' related premise—that Mr. Merriman signed the LSA, the Joinder, and the Perfection Certificate "only on behalf of a Loan Party," and that "no count of the SAC seeks recovery from him under any of them," Opp. at 3, 12—is wrong. The LSA defines "Loan Party" to include "each Guarantor," which includes Mr. Merriman. Ex. A of the LSA and Merriman's Guaranty make any "Event of Default" under the Loan Documents an Event of Default under the Guaranty, Ex. H § 5.5(e)—including any materially false statement made "to induce any Lender to enter this Agreement," Ex. A § 8.8. Further, Count I explicitly seeks recovery from Mr. Merriman under the LSA, seeking fees recoverable under the Loan Agreement and the Guaranties. SAC ¶¶ 243–244.

Plaintiffs' authorities do not hold otherwise. In *U.S. Tsubaki Holdings, Inc. v. Estes*, 194 A.D.3d 590 (1st Dep't 2021), the fraud defendants "were not parties to the [contract]." Opp. at 12. Mr. Merriman, by contrast, is a party to the Guaranties that guarantee the Obligations and that contain his own warranties covering the same subject matter. And while it is true that corporate officers may be held liable for fraud in which they participated, neither *Pludeman v. Northern Leasing Sys., Inc.*, 10 N.Y.3d 486, 491 (2008) nor *Polonetsky v. Better Homes Depot, Inc.*, 97 N.Y.2d 46, 55 (2001), addresses whether a fraud claim against an officer who is also a contracting party is duplicative of a contract claim against him.

### B. Pre-Closing Statements are Not Misstatements of Present Fact but Contractual Promises Regarding Prospective Performance

Plaintiffs next argue that the February-May 2024 diligence statements were misrepresentations of present fact that induced A.R.I. to lend "before any contract existed." Opp. at 13. In reality, these misrepresentations simply evinced "an insincere promise of future performance," if Defendants are to take the Plaintiffs' allegations as true, as is required at this stage. *See Wyle Inc. v. ITT Corp.*, 130 A.D.3d 438, 442-43 (1st Dep't 2015). And, in such cases, a duplicative fraud claim, *see supra* Section II(A), cannot survive.

### C. Plaintiffs' Partial-Disclosure and Superior Knowledge Duty Theories Still Fail

Plaintiffs defend the partial-disclosure duty exception on the grounds that Mr. Merriman was "bound to speak fully" about facts "peculiarly within his knowledge." Opp. at 14-15. But Plaintiffs still identify no specific "partial or ambiguous statement, whose full meaning [would] only be made clear after complete disclosure." *First Hill Partners, LLC v. Bluecrest Capital Mgmt.*, 52 F. Supp. 3d 625, 638–39 (S.D.N.Y. 2014). Plaintiffs allege only that Mr. Merriman "answered A.R.I.'s diligence inquiries" and "described the Company's liquidity." Opp. at 14. That is a description of the subject matter the Loan Documents required the Loan Parties to disclose and warrant, not an extracontractual half-truth.

Plaintiffs' superior-knowledge theory fails for the same reason. The information Plaintiffs say was withheld—indebtedness, liens, litigation, and financial condition—is precisely what the Loan Documents required the Loan Parties and Mr. Merriman to report and warrant. Ex. A §§ 5.4, 5.5, 5.13, 6.2; Ex. H § 5.1. Any duty to disclose it thus arises from the contract, not independently of it. Plaintiffs also do not defend "affirmative acts of concealment" or a "general duty" as

independent sources of a duty to disclose, SAC ¶ 256(c)–(d); Mot. at 20, and have therefore abandoned those theories.

**D. A.R.I.'s Exercise of the Warrant Cannot Qualify as Fraud-Caused Special Damages**

Plaintiffs rest their special-damages theory entirely on A.R.I.'s exercise of the Warrant on January 2 and 5, 2026, arguing that it is an out-of-pocket loss that is directly tied to the fraud. Opp. at 15-16. Plaintiffs' argument fails.

First, the Warrant exercise was a voluntary, post-acceleration equity purchase made while A.R.I. was assuming control of the Company. SAC ¶¶ 163-169. A.R.I. and Credit Fund jointly issued the Notice of Default accelerating all Obligations on January 2, 2026—the same day A.R.I. began exercising the Warrant. *Id.* And, by that point, Plaintiffs admit that they had been "faced with ongoing non-payment, repeated Events of Default, and explicit threats of bankruptcy." SAC ¶ 39. By January 5, A.R.I. had already removed Mr. Merriman as a director and confirmed Ellison as the Company's sole director. SAC ¶¶ 166, 169. As a result, it is illogical that the Warrant exercise was simply "the direct, immediate, and proximate result" of alleged misrepresentations that began two years prior. *Kregos v. AP*, 3 F.3d 656, 665 (2d Cir. 1993).

Second, Plaintiffs' own theory of loss confirms that the Warrant claim seeks benefit-of-the-bargain damages. Plaintiffs argue that the pleaded facts "support a reasonable inference that the equity was worth far less than the exercise price." Opp. at 15. That is a claim that A.R.I. did not receive the value it bargained for when it exercised a contractual right at a contractually agreed price. It is precisely the "benefit of the bargain" measure that New York does not award for fraud. *See Ostano Commerzanstalt v. Telewide Systems, Inc.*, 794 F.2d 763, 766 (2d Cir. 1986).

Finally, Plaintiffs' failure to defend their other claimed losses should be treated as a concession that those items are either the same recovery A.R.I. seeks in Count I, a loss not proximately caused by any misrepresentation, or a benefit-of-the-bargain measure that is not cognizable as special damages. Mot. at 23-25.

### E. A.R.I. Lacks Standing to Assert Credit Fund's Fraud Claim

Plaintiffs fail to adequately argue that A.R.I. has standing to assert Count III. Any loss from an inducement to lend is Credit Fund's, as Credit Fund made the loan. Ex. A § 2.2(a)(i). A.R.I. sues as an agent of Credit Fund, and its authority is limited to bringing contract claims. *See supra* Section I(E). Finally, Plaintiffs identify no instrument by which Credit Fund transferred "ownership of, or title to," its fraud claim to A.R.I. Opp. at 16. Accordingly, A.R.I. lacks standing to assert Count III.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court join Credit Fund and dismiss Count III with prejudice.

Dated: November 6, 2026
New York, NY

Respectfully submitted,

*/s/ Alain P. Mathieu*

Alain P. Mathieu (*pro hac vice*)
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000
amathieu@foleyhoag.com

Amanda S. Coleman
FOLEY HOAG LLP
1301 Avenue of the Americas
New York, NY 10019
(212) 812-0400
acoleman@foleyhoag.com

*Counsel for Shawne Merriman individually, and as Trustee of Trust M250124 and Lights Out Holdings LLC, a California limited liability company*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the preceding brief complies with the word-count limitations set forth in Local Rule 7.1(c) because it contains 3,499 words, excluding the parts of the document exempted by Local Rule 7.1(c).

Date: November 6, 2026

*/s/ Alain P. Mathieu*
Alain P. Mathieu